**MOTIENT CORPORATION, Appellant,**

v.

**James D. DONDERO, Appellee.**

No. 05–07–00580–CV.

Court of Appeals of Texas, Dallas.

Aug. 20, 2008.

Rehearing Overruled Nov. 25, 2008.

T. Ray Guy, Paige Holden Montgomery, Brian J. D'Amico, Ken Barnett, Weil, Gotshal & Manges, LLP, Dallas, TX, for Appellant.

Craig Trively Enoch, Austin, Jay J. Madrid, Winstead Sechrest & Minick, P.C., Dallas, TX, for Appellee.

Before Justices MOSELEY, BRIDGES, and LANG–MIERS.

## OPINION

Opinion by Justice MOSELEY.

Motient Corporation appeals a summary judgment granted in favor of James D. Dondero on grounds of res judicata. In its first issue, Motient contends Dondero is not entitled to summary judgment because he did not establish his affirmative defense of res judicata as a matter of law. We decide this issue in Motient's favor, reverse the order granting summary judgment, and remand this case for further proceedings.

## I. FACTUAL BACKGROUND

The following factual recitation is taken from Motient's first amended petition in this case. Motient[1] is a publicly held corporation providing two-way wireless mobile data services and nationwide wireless internet services. Dondero is president of Highland Capital Management, L.P., an investment manager of affiliated hedge funds (the "Highland Entities"). Through a series of transactions and events culminating in a reorganization plan approved in Motient's 2002 Chapter 11 bankruptcy proceeding, the Highland Entities became owners of Motient common stock. In July 2002, Dondero became a member of Motient's Board of Directors.

In 2004, Motient's management and directors began redirecting Motient's focus toward capitalizing on its equity interest in two other companies. One of those companies was TerreStar Networks, Inc., which controlled FCC-allocated radio licenses crucial to the development of next-generation hybrid satellite/terrestrial mobile communications systems. In April 2005, to raise capital to facilitate its investment in TerreStar, Motient issued a certain amount of Series A Cumulative Convertible Preferred Stock, of which four of the Highland Entities purchased some shares. Dondero requested the voting rights of the Series A Preferred Stock be limited so the Highland Entities could participate without being required to make a filing under a federal statute and risk missing an opportunity to buy shares of the Series A Preferred Stock while waiting for the expiration of the mandatory wait-

**1.** Motient Corporation changed its "corporate identity" to TerreStar Corporation in 2007, according to its brief. We follow Motient's brief in referring to itself as Motient.

ing period. Motient agreed and issued the Series A Preferred Stock with a Certificate of Designations providing for limited voting rights.

After the Series A Preferred Stock transaction closed, Motient's attorneys discovered the description of the restricted voting rights in the Certificate of Designations might be construed as conflicting with Motient's Restated Certificate of Incorporation, which provided that Motient shall not issue any class of non-voting stock. In July 2005, Motient's counsel circulated a confidential memorandum, advising the board of the potential problem. Without Dondero's participation, the board approved: (1) the filing of a Certificate of Designations to set forth correctly the voting rights for Series A Preferred Stock, thus effectuating Motient's intent that the Series A Preferred Stock have limited voting rights consistent with the Highland Entities's statutory filing needs; and (2) an offer to exchange shares of the Series A Preferred Stock for an equal number of shares of "virtually identical" Series B Cumulative Convertible Preferred Stock.

According to Motient, Dondero decided to engage in a proxy fight for control of Motient. In the summer of 2005, Dondero, through Highland Capital attorneys, complained to the SEC about Motient. Beginning in August 2005, the Highland Entities filed the first of six lawsuits against Motient, its outside counsel, and certain Motient officers and board members. According to Motient, Dondero used confidential information to further his proxy fight and took other anti-Motient actions, including: (1) making complaints necessitating an investigation by the board's audit committee; (2) opposing a transaction as to TerreStar beneficial to Motient, opposition that was motivated by an undisclosed investment in a competitor; (3) making additional SEC filings; (4) calling Motient investors and disseminating nonpublic information and criticisms of Motient; and (5) refusing to take steps required by NASDAQ rules to achieve a listing. In February 2006, Dondero resigned from the board and publicly announced a proxy fight.

## II. PROCEDURAL BACKGROUND

In October 2005, Motient filed two suits against Dondero: one in federal court[2] and this case in state court. In the federal suit, Motient sued Dondero and then amended its complaint to add other defendants, including Highland Capital and certain Highland Entities. In its first amended complaint, Motient contended that Dondero, on behalf of himself and his affiliates, sought to persuade Motient's shareholders to cede control of Motient to Dondero through false, misleading, and incomplete public statements. Motient alleged the defendants violated certain provisions of the Securities Exchange Act of 1934 and rules thereunder by making improper Schedule 13D/A filings. These filings related to the Series A Preferred Stock transaction and the proposed TerreStar transaction. Motient alleged that the improper 13D amendments were "designed to improperly influence the vote by Motient shareholders on critical corporate transactions and therefore constitute disguised proxy solicitations."

Dondero and the other defendants filed a motion to dismiss the federal suit pursuant to rule of civil procedure 12(b)(6) on grounds that a heightened pleading standard applied under the federal Private Se-

2. *Motient Corp. v. Dondero,* No. 3:05–CV–2070–P (N.D.Tex. Feb. 5, 2007) (am. fin. judg.), *aff'd,* 529 F.3d 532 (5th Cir.2008).

curities Litigation Reform Act. *See* 15 U.S.C.A. § 78u–4(b)(1) (West 1997). Thereafter, the federal court dismissed Motient's claims without prejudice. However, Dondero moved to amend the judgment because a dismissal under rule 12(b)(6) must be with prejudice. Ultimately, the federal court signed an amended final judgment dismissing Motient's claims with prejudice.

In the state court case, Motient alleged Dondero "embarked on a course of action designed to undermine and disrupt Motient's business with the ultimate goal of taking control of Motient in a proxy contest." Motient alleged Dondero was a director of Motient and owed Motient and its shareholders fiduciary duties of loyalty and care and the duty of good faith, which Dondero breached by engaging in the actions outlined above that damaged Motient. For convenience, we will refer to these as Motient's "fiduciary duty claims."

While Motient's federal case was pending, Dondero moved unsuccessfully to abate and stay the state court case. After the federal suit was dismissed, Dondero moved for summary judgment on Motient's fiduciary duty claims based on res judicata. Relying on the federal court's amended final judgment dismissing the federal suit, Dondero contended he had proved conclusively every element of that affirmative defense. Motient filed a response, arguing Dondero was not entitled to summary judgment based on res judicata because he failed to prove two elements, specifically, that the federal and state lawsuits arose from the same transaction or occurrence and the judgment in the federal action was rendered by a court that would have had jurisdiction over its fiduciary duty claims. Dondero filed a reply to this response. The trial court granted Dondero's motion for summary judgment and dismissed Motient's fiduciary duty claims with prejudice. This appeal followed.

## III. STANDARD OF REVIEW

 Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). We review the trial court's summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In our review, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion in the nonmovant's favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex.2005). In this case, Dondero has the burden to show he is entitled to summary judgment by pleading and proving all elements of his affirmative defense. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). *See also* Tex.R. Civ. P. 94; *Fernandez v. Mem'l Healthcare Sys., Inc.*, 896 S.W.2d 227, 230 (Tex.App.–Houston [1st Dist.] 1995, writ denied). If Dondero established his asserted affirmative defense of res judicata, Motient, as the nonmovant plaintiff, must then adduce summary judgment proof raising a fact issue in avoidance of that affirmative defense. *See Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex.2005). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* Tex.R. Civ. P. 166a(c).

## IV. APPLICABLE LAW

 Since the first suit was decided in federal court, federal law controls the determination of whether res judicata will bar a later state court proceeding. *Geary v. Tex. Commerce Bank*, 967 S.W.2d 836,

837 (Tex.1998) (per curiam); *Eagle Props., Ltd., v. Scharbauer,* 807 S.W.2d 714, 718 (Tex.1990) (citing *Aerojet–Gen. Corp. v. Askew,* 511 F.2d 710, 715 (5th Cir.), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975)); *Brown v. Dr. Michael D. Hoffman & Assocs.,* 111 S.W.3d 826, 829 (Tex.App.–Dallas 2003, no pet.). Res judicata, or claim preclusion, bars the litigation of claims that either have been litigated or should have been raised in an earlier suit. *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 571 (5th Cir. 2005), *cert. denied,* 547 U.S. 1055, 126 S.Ct. 1662, 164 L.Ed.2d 397 (2006). When two successive suits seek recovery for the same injury, "a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit." *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 564 (5th Cir.1983) (citation omitted). Under federal law, the doctrine of res judicata will apply if: (1) the parties are identical in both suits or in privity; (2) the same claim or cause of action was involved in both suits; (3) the prior judgment is rendered by a court of competent jurisdiction; and (4) the prior action was concluded by a final judgment on the merits. *Test Masters Educ. Servs., Inc.,* 428 F.3d at 571; *Procter & Gamble Co. v. Amway Corp.,* 376 F.3d 496, 499 (5th Cir.2004).

## V. DISCUSSION

In its response to the motion for summary judgment and on appeal, Motient argues Dondero did not establish two essential elements of res judicata, the "same claim or cause of action" and "court of competent jurisdiction" elements. We consider each of these arguments in turn.

### A. Same Claim or Cause of Action

Motient argues this state suit does not involve the same claim or cause of action

as its federal lawsuit. According to Motient, at most, the two suits share certain background facts, but do not arise from the same nucleus of operative facts.

### 1. Applicable Law

■■■ To determine whether both suits involve the same claim or cause of action, the Fifth Circuit applies the transactional test. *Test Masters Educ. Servs., Inc.,* 428 F.3d at 571. Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff with respect to all or any part of the transaction, or series of connected transactions, out of which the original action arose. *Id.* What grouping of facts constitutes a transaction or series of transactions must be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit confirms to the parties' expectations or business understanding or usage. *Id. See* RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982). Under the transactional test, "the critical issue is not the relief granted or the theory asserted but whether the plaintiff bases the two actions on the same nucleus of operative facts." *Agrilectric Power Partners, Ltd. v. Gen. Elec. Co.,* 20 F.3d 663, 665 (5th Cir.1994) (quoting *Matter of Howe,* 913 F.2d 1138, 1144 (5th Cir.1990)). If the factual scenario of the two actions parallel, the same cause of action is involved in both. *Id.* The substantive theories advanced, forms of relief requested, types of rights asserted, and variations in evidence needed do not inform this inquiry. *Id.*

### 2. Discussion

■■■ As detailed above, Motient's pleadings in both the state and federal suits described a proxy fight by which

Dondero tried to take control of Motient and engaged in certain conduct directed to that end. For example, in its first amended complaint in the federal suit, Motient alleged that the action arose from Dondero's improper attempts "to persuade Motient's shareholders to cede control of Motient to Dondero through false, misleading, and incomplete public statements." Elsewhere in its complaint, Motient alleged Dondero's improper SEC filings were "part of [his] undisclosed scheme" "to gain a controlling ownership interest in Motient" and "constitute[d] disguised proxy solicitations." Motient also alleged that the disparaging statements in the SEC filings were made "in an apparent effort to sway Motient's shareholders to support Dondero's misguided efforts to gain control of Motient."

In its first amended petition in this state suit, Motient made the following allegation:

> In spite of these clear duties [that is, duties of loyalty and confidentiality], Dondero—both individually and through the hedge funds he controls—embarked on a course of action designed to undermine and disrupt Motient's business with the ultimate goal of taking control of Motient in a proxy contest.

Motient also alleged that Dondero's complaints to the SEC were part of his "scheme to take control of Motient." Other steps in the "plan to take over Motient" and the "future proxy battle" included misusing confidential information related to the Series A Preferred Stock, filing lawsuits against Motient and related parties related to that issue, opposing the TerreStar transaction and making false SEC filings on that issue, refusing to cooperate with the audit committee investigation, and resisting the NASDAQ listing.

The summary judgment evidence also includes the federal district court's order denying in part Dondero's motion to stay discovery, in which the court stated that the state and federal cases "are based on the same set of underlying facts.... In both cases Motient accuses Dondero of seeking to drive down the value of Motient's common stock in an effort to gain control of the company." We conclude the factual scenario of the two actions parallel, and, therefore, the same cause of action is involved in both. *See Agrilectric Power Partners, Ltd.*, 20 F.3d at 665 (transactional test met: failure of steam turbine basis of two lawsuits, one alleged design and installation defects, and other alleged breach of service contracts); *Matter of Howe*, 913 F.2d at 1144–45 (transactional test met: loan transaction subject of earlier bankruptcy proceedings and later lender liability claims).

Nevertheless, Motient argues the two suits do not share the same nucleus of operative facts. First, Motient argues the only operative fact shared by the two suits is the fact of the Motient-disparaging SEC filings. Motient argues the operative facts of the federal suit were that Dondero and the Highland Entities, as Motient shareholders, made false or misleading statements about Motient in their SEC filings. Motient argues that the operative facts of the state suit were that Dondero, as a member of the board of directors, embarked on an undisclosed scheme to gain control of Motient, taking the actions that included failing to disclose to Motient his investments in competitors, engaging in litigation contrary to his fiduciary duties and the best interests of Motient and its shareholders, making misleading SEC filings, and other actions alleged in its pleading.

However, the conduct Motient recites as operative facts is the conduct underlying the specific causes of actions alleged in each suit, that is, the federal securities

statute violations in the federal suit and the fiduciary duty claims in the state suit. Operative facts are not restricted to the cause of action raised or the remedy sought. *Agrilectric Power Partners, Ltd.,* 20 F.3d at 665. Rather, "the nucleus of facts defines the claim rather than the legal theory posed or recovery sought." *Matter of Howe,* 913 F.2d at 1144. Consequently, we look first at the nucleus of facts, detailed above, and then at the legal theories posed.

Next, Motient argues that the proxy fight intentions are background, not operative, facts and conclude that Motient's reliance on *Brown* to support its argument is misplaced. In *Brown,* a former employee (Brown) sued her former employer and his medical practice in federal court on a claim that they failed to pay money she was owed from a profit-sharing retirement plan. *Brown,* 111 S.W.3d at 828. The trial court entered the parties' agreed order decreeing that Brown be paid the amount owed under the plan. *See id.* Brown also sued the defendants in state court for breach of contract and sworn account based on a written termination agreement between the parties, in which the employer agreed to pay off Brown's mortgage on her home, buy her a new car, and give her a severance of at least $25,000. One of the grounds on which the defendants sought summary judgment was that the state suit was precluded by the federal judgment under res judicata. Summary judgment was granted for the defendants.

This Court considered the issue whether the defendants established the requirement that both suits involved the same cause of action. *See id.* at 829. Applying the transactional test, we determined that the operative facts were not grounded in Brown's termination. Rather, "each was based on a separate and distinct contractu-al obligation." *Id.* The termination was the impetus for the defendants' two separate obligations, one under the profit-sharing plan and the other under a termination agreement. Although Brown's termination was the background of the state suit, there was no common nucleus of operative facts because Brown's complaints arose from two separate obligations.

In contrast, Motient's theories of liability may arise from Dondero's separate obligations as a shareholder and as a board member, but both suits arise from the actions he took in his alleged attempt to take control of Motient. Whether Dondero acted as a shareholder in violating a federal statute as alleged in the federal suit or as a company director in violating fiduciary duties in this state suit is immaterial because the factual scenario of the two actions parallel. Under the allegations here, the intended proxy fight was not the background to Dondero's actions, but the alleged reason for them.

 We also reject Motient's argument that the proof will be different in the trials of the federal and state cases. "Variations in evidence" is not part of the transactional test. *See Agrilectric Power Partners, Ltd.,* 20 F.3d at 665; RESTATEMENT (SECOND) OF JUDGMENTS § 25 (1982) (res judicata prevents splitting of claims "even though the plaintiff is prepared in the second action (1)[t]o present evidence or grounds or theories of the case not presented in the first action, or (2)[t]o seek remedies or forms of relief not demanded in the first action").

 Lastly, Motient argues that, even if the federal district court's ruling precludes mention of the Schedule 13D filings in the state court lawsuit, it can still prevail on its fiduciary duty claims, thus meeting the standard set out in *Test Masters* that "[i]f a party can only win the suit by convincing the court that the prior judg-

ment was in error, the second suit is barred." *See Test Masters Educ. Servs.,* 428 F.3d at 571. Thus, argues Motient, the state court suit will not require the relitigation of any issues already decided. But the transactional test does not focus on already decided issues; it focuses on a common nucleus of operative facts. The claims are "transactionally defined" to determine the application of res judicata, not issue defined. *See Maldonado v. Flynn,* 417 A.2d 378, 382 (Del.Ch.1980).

We reject Motient's arguments and conclude that Dondero established as a matter of law that the same claim or cause of action was involved in both the federal and state actions. *See Test Masters Educ. Servs., Inc.,* 428 F.3d at 571. We resolve Motient's issue against it to this extent.

## B. Court of Competent Jurisdiction

Motient argues the prior judgment was not rendered by a court of competent jurisdiction over the fiduciary duty claims because the federal district court either would not have had jurisdiction over those claims or clearly would not have exercised that jurisdiction. None of the parties assert that the federal court had federal question jurisdiction over Motient's fiduciary duty claims. *See* 28 U.S.C.A. § 1331 (West 2006) (federal district courts have jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States"). Thus, we address: (1) whether the federal court would have had jurisdiction over Motient's fiduciary duty claims based on diversity of citizenship; (2) whether the federal court would have had supplemental jurisdiction over those claims; and, if the answer to (2) is affirmative, (3) whether it was clear that the federal court would have declined to exercise that supplemental jurisdiction.

### 1. Diversity Jurisdiction

A lack of complete diversity between the parties deprives federal courts of diversity jurisdiction. *Ingram v. CSX Transp., Inc.,* 146 F.3d 858, 861 (11th Cir.1998); 28 U.S.C. § 1332 (West 2006 & Supp.2008). When a plaintiff amends a complaint to add a direct claim against a nondiverse defendant, complete diversity is destroyed. *Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978).

Motient amended its complaint to add Highland Equity Focus Fund, L.P., a Delaware limited partnership. Motient is a Delaware corporation. This amendment destroyed diversity. *See id. See also Estate of Alvarez v. Donaldson Co.,* 213 F.3d 993, 995 (7th Cir.2000) (stating rule in *Owen Equipment & Erection Co.* "requires plaintiffs to establish diversity as part of an amended complaint just as they did for the original complaint"). Accordingly, we agree with Motient that the federal district court lacked diversity jurisdiction in the federal suit and would not have had jurisdiction over the fiduciary duty claims on that basis.

Dondero's reliance on language in *Eagle Properties, Ltd.,* 807 S.W.2d at 719 n. 2, to support his argument that the test for diversity jurisdiction is whether diversity exited at the time the federal suit was filed is misplaced. That case did not involve a amended complaint and is therefore distinguishable.

### 2. Existence of Supplemental Jurisdiction

Federal courts have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a) (West 2006). In the federal suit, Motient alleged the district court had federal question jurisdiction be-

cause the claims it alleged arose under the Securities Exchange Act of 1934. *See* 15 U.S.C.A. § 78aa (West 1997) (district courts have jurisdiction of violations of United States Code title 15, chapter 78 and rules and regulations thereunder); 28 U.S.C.A. § 1331.

We concluded above that Motient's securities claims and its fiduciary duty claims derive from the same nucleus of operative facts. This supports the existence of supplemental jurisdiction over the fiduciary duty claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (state and federal claims must derive from common nucleus of operative fact; but, considered without regard to federal or state character, if "a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is power in federal courts to hear the whole"); *Jeanes v. Henderson*, 688 S.W.2d 100, 102 n. 2 (Tex.1985). We conclude the fiduciary duty claims are so related to the claims Motient asserted in federal court that they form part of the same case or controversy under Article III of the United States Constitution. *See* 28 U.S.C.A. § 1367(a). Thus, the federal court would have had supplemental jurisdiction over those claims. *Id.*

### 3. Exercise of Supplemental Jurisdiction

#### a. Applicable Law

Although possessing supplemental jurisdiction under section 1367(a), however, a federal district court may decline to exercise that jurisdiction if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3). Thus, supplemental jurisdiction is a doctrine of discretion. *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130.

The justification for supplemental jurisdiction

> lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. *Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.*

*Id.* at 726, 86 S.Ct. 1130 (emphasis added, citations and footnotes omitted). When the sole federal-law claim is eliminated "at an early stage of the litigation" the federal district court has "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

The following Restatement provision is derived from *Gibbs* and explores, among other things, the extent of res judicata based on whether the federal court would have had or exercised supplemental, or "pendent," jurisdiction over actions filed in a subsequent, state court proceeding:

> *e. State and federal theories or grounds.* A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or

ground. *If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.*

RESTATEMENT (SECOND) OF JUDGMENTS § 25 cmt. e (1982) (emphasis added). The Restatement further illustrates this principle as follows:

> 10. A commences an action against B in a federal court for treble damages under the federal antitrust laws. After trial, judgment is entered for the defendant. A then seeks to commence an action for damages against B in a state court under the state antitrust law grounded upon substantially the same business dealings as had been alleged in the federal action. *Even if diversity of citizenship between the parties did not exist, the federal court would have had "pendent" jurisdiction to entertain the state theory. Therefore, unless it is clear that the federal court would have declined as a matter of discretion to exercise that jurisdiction (for example, because the federal claim, though substantial, was dismissed in advance of trial), the state action is barred.*

RESTATEMENT (SECOND) OF JUDGMENTS § 25 cmt. e, illus. 10 (1982) (emphasis added). Thus, even if the federal court would have had supplemental jurisdiction over Motient's fiduciary duty claims, those claims are not barred by the federal court's judgment if "it [was] clear that the federal court would have declined as a matter of discretion to exercise that jurisdiction . . . ." *See id.*

### b. Discussion

Motient asserted it was the practice of the federal court judge, the Honorable Jorge Solis, to dismiss pendent state law claims when all federal claims have been dismissed, particularly when the federal law claims have been dismissed at an early stage. Motient directs our attention, as it did the trial court's, to eight cases authored by Justice Solis, in which he declined to exercise supplemental or pendent jurisdiction upon the dismissal of federal claims.

In *Dolenz v. Akin*, No. 3:95–CV–1605–P, 1997 WL 21388 (N.D.Tex. Jan. 14, 1997) (mem. op. & order), *aff'd* 129 F.3d 612 (5th Cir.1997), the plaintiff sued for civil rights violations under title 42, section 1983 of the United States Code and for false imprisonment under state law. After dismissing the federal claim under rule of civil procedure 12(b)(6) for failure to state a claim for which relief can be granted, the court chose not to retain its jurisdiction over the "pendent state-law false imprisonment claims." *Id.* at *5, 6. In the court's order, Judge Solis stated that, although the case was set for trial in the "near future," it had not progressed very far since discovery had been stayed throughout the proceeding and that "[c]onsequently, the case is at an early stage and there has not yet been a substantial commitment of federal judicial resources." *Id.* Judge Solis then stated that considerations of judicial economy, convenience, and fairness did not require exercising pendent jurisdiction, *id.* (citing *La Porte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir.1986)), and that the consideration of comity "obviously" weighed against exercising pendent jurisdiction. *Id. See Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130 (discussing factors considered in discretionary exercise of pendent jurisdiction, including judicial economy, convenience, fairness, and comity). As a result, Judge Solis dismissed Dolenz's state law claims without prejudice.

In *Amir–Sharif v. Valdez*, No. 3:06–CV–2258–P, 2007 WL 1791266, at \*5 (N.D.Tex. June 6, 2007) (order), Judge Solis again summarily dismissed prior to trial a federal civil rights claim because, on the pleadings, the suit was frivolous or failed to state a claim upon which relief can be granted under title 28, section 1915(e)(2) of the United States Code. Judge Solis declined to exercise supplemental jurisdictional over the plaintiff's remaining state law claim, again considering the factors of "judicial economy, convenience, fairness, federalism, and comity." *Id.* Thus, the state law claims were dismissed without prejudice.

Judge Solis again declined to exercise supplemental jurisdiction over state law claims after dismissing federal claims on summary judgment in *Hazelton v. City of Grand Prairie, Tex.*, 8 F.Supp.2d 570, 582 (N.D.Tex.1998) (mem. op. & order), referencing "considerations of judicial economy, convenience, fairness to litigants, and com-

ity" and citing *Carnegie–Mellon University*, 484 U.S. at 350, n. 7, 108 S.Ct. 614, and *Parker & Parsley Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992), and other cases.

▬ The other five cases, relied on by Motient and cited below, stand for the same proposition, and will not be addressed here at length.[3] These cases support the conclusion that, if all federal causes of action are dismissed prior to trial, and particularly if they are dismissed early in the suit, it is Judge Solis's practice to decline to exercise supplemental jurisdiction over state law claims, and instead to dismiss them without prejudice.

Here, the federal suit was dismissed on Dondero's a federal rule of civil procedure 12(b)(6) motion, which asserted that Motient had failed to plead a cause of action under the heightened pleading requirements applicable under a federal statute. Although the federal court originally dis-

---

**3.** *See Miller v. Am. Int'l Group, Inc.*, No. 3:04–CV–1417–P, 2005 WL 1131110, at \*6 (N.D.Tex. May 9, 2005) (mem. op. & order) (federal claims including RICO dismissed pretrial with prejudice, and state claims dismissed without prejudice; subsequently pleaded state law claims not barred by res judicata because even if they had been pleaded previously "it is clear ... 'this Court would have declined to exercise its jurisdiction' over those claims"); *Barron v. Dallas County*, No. 3:03–CV–0153–P, 2004 WL 690836, at \*6 (N.D.Tex. Mar. 30, 2004) (mem. op. & order) (federal civil rights claim dismissed on summary judgment; court declines to exercise supplemental jurisdiction over state claims, citing *Slaughter v. Allstate Ins. Co.*, 803 F.2d 857, 859 (5th Cir.1986) (holding "in the absence of a federal claim, a district court may in its discretion, and generally should, dismiss pendent state law claims")); *Allen v. Ctr. Operating Co., L.P.*, No. Civ. A. 302CV1764P, 2003 WL 22364328, at \*9 (N.D.Tex. Oct. 1, 2003) (mem. op. & order) (federal discrimination claims dismissed on summary judgment; state law assault claim dismissed without prejudice as court declined to exercise supple-

mental jurisdiction over it, quoting *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir.1998) ("When all federal claims are dismissed or otherwise eliminated from a case prior to trial, ... the 'general rule' is to decline to exercise jurisdiction over the pendent state law claims."), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 n. 11 (5th Cir.2003)); *Scott v. Sims*, No. 3–01–CV–1741–P, 2001 WL 1172180, at \*2 (N.D.Tex. Sept. 28, 2001) (federal civil rights claim dismissed on pleadings pursuant to section 1915(e)(2); state breach of contract claim also dismissed; citing *LaPorte Constr. Co.*, 805 F.2d at 1257, for the proposition that "judicial economy argues against the exercise of pendent jurisdiction ... if federal claims are dismissed at a preliminary stage"); *Reed v. Gonzalez*, No. Civ.A. 499CV603P, 2001 WL 640788, at \*6 (N.D.Tex. June 8, 2001) (order) (federal civil rights claim dismissed on pleadings pursuant to section 1915A(b); state law tort claims dismissed without prejudice pursuant to magistrate's conclusions and recommendation that court should decline to exercise supplemental jurisdiction).

missed the suit without prejudice, it subsequently entered an order of dismissal with prejudice, as required by rule 12(b)(6).

We conclude the same principles of judicial economy, convenience, fairness, and comity that Judge Solis specifically discussed in *Dolenz, Amir–Sharif*, and *Hazelton*, and followed in the other cases from Judge Solis's court referenced by Motient, applied in Motient's federal case as well. *See Carnegie–Mellon Univ.*, 484 U.S. at 351, 108 S.Ct. 614; *Gibbs*, 383 U.S. at 726, 86 S.Ct. 1130; *Parker & Parsley Petroleum Co.*, 972 F.2d at 585. Accordingly, we conclude Motient met its burden to show the federal court clearly would have refused to exercise its discretionary supplemental jurisdiction over its fiduciary duty claims. *See* Restatement (Second) of Judgments § 25 cmt. e, illus. 10. We resolve Motient's issue in its favor to this extent.

### VI. CONCLUSION

Because of our resolution of Motient's arguments under its first issue, we conclude Dondero did not establish the "court of competent jurisdiction" element of its res judicata affirmative defense as a matter of law. Therefore, the trial court erred in granting summary judgment in Dondero's favor. We need not address Motient's second issue. *See* Tex.R.App. P. 47.1.[4]

We reverse the trial court's order granting summary judgment and remand this cause to the trial court for further proceedings.

---

4. In its second issue, Motient contends the granting of summary judgment was inconsistent with a previous ruling on Dondero's mo-tion to abate, which unfairly denied Motient any opportunity to prosecute its claims against Dondero.