

# NUMBER 13-11-00473-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**ROBERT S. LEMER,**                                **Appellant,**

**v.**

**CAROL COGGINS AND HARLEY
JEROME COGGINS,**                              **Appellees.**

---

### On appeal from the 319th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION[1]

### Before Chief Justice Valdez and Justices Rodriguez and Garza
### Memorandum Opinion by Justice Rodriguez

---

[1] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

Appellant Robert S. Lemer, who was substituted as plaintiff for Constance L. Nelson (Connie), now deceased, challenges the trial court's summary judgment entered against Connie and in favor of appellees Carol Coggins and Harley Jerome Coggins. By four issues which we reorganize as one, Lemer contends that the trial court erred in granting the Cogginses' motion for summary judgment because Connie's fraud claims were not barred by res judicata.[2] We affirm, in part, and reverse and remand, in part.

## I. BACKGROUND

### A. Underlying Will Contest

It is undisputed that when Mary Beth Nelson died on June 22, 2004, Connie, Mary Beth's mother, filed an application for letters of independent administration in her daughter's estate. The application was filed in County Court at Law No. 2, Nueces County, Texas, as Cause No. 4244802. Approximately two weeks later, Carol, Mary Beth's cousin, filed her application in that court, requesting the probate of a March 22, 2004 will that named Carol as beneficiary of Mary Beth's estate and for letters testamentary. The will made no mention of Connie. Carol also requested appointment as independent executrix of the estate, with her husband, Harley, as alternate executor. Connie filed her opposition to Carol's application.

On June 27, 2005, the parties entered into a Family Settlement Agreement (the Agreement) that, by its terms, resolved claims asserted in the will contest. According to the records provided to this Court and the briefing of the parties, the Agreement was not

---

[2] Lemer's supporting arguments include the following: (1) Connie's claim for insurance policy proceeds was not based on the same claims raised in the will contest: (2) it was not within the probate court's powers to adjudicate assets that were not assets of Mary Beth's estate; (3) Connie's claim for insurance policy proceeds did not accrue until after a settlement agreement was executed; and (4) the settlement agreement was never filed of record or made part of the trial court's final judgment and, therefore, could not be the basis of Connie's res-judicata defense.

2

filed with the probate court. On July 29, 2005, the trial court signed an agreed order of dismissal. This order did not refer to the Agreement. That same day, by agreement, the trial court appointed Lemer, Connie's brother and Mary Beth's uncle, independent administrator of Mary Beth's estate.

**B.      Current Lawsuit**

Following the dismissal of the will contest, Connie sued Carol and Harley in the 319th District Court of Nueces County, Texas, for fraud and wrongful conversion. Specifically, Connie alleged the following:  (1) fraud in the procurement of the Agreement; (2) fraud in the change of the beneficiaries of Mary Beth's $100,000.00 Midland National Life Insurance Company policy (the Policy); and (3) wrongful conversion of Connie's assets for Carol's own use and benefit. Connie also alleged that the 2004 will, naming Carol as beneficiary and executrix, was procured by undue influence over Mary Beth because of her diminished capacity and by fraud in the production of an invalid will because it appears to have been notarized and witnessed on the morning of March 23, 2004 when Mary Beth was not in Aransas Pass, Texas, but was in the hospital in Corpus Christi, Texas. On appeal, Connie does not challenge the summary judgment as to her allegations related to the 2004 will.

Carol and Harley answered, generally denying Connie's claims. They also filed a counterclaim asserting frivolousness and requesting court costs and attorney's fees.

**1.      The Cogginses' Traditional Motion for Summary Judgment**

The Cogginses filed a traditional motion for summary judgment alleging the following relevant facts:

The [w]ill contest was dismissed by Agreed Order on July 29, 2005. All issues that were in contention were disposed of including the real property, personal property and a Life Insurance Policy by an [sic] Family Settlement Agreement signed June 27, 2005 by Carol Coggins and Harley Coggins and signed by Constance Nelson on July 13, 2005. All parties were represented and advised by counsel including Constance Nelson on the ramifications of signing the Family Settlement Agreement. . . .

The only item of real value that the Defendant's [sic] received was the [l]ife [i]nsurance [p]olicy which was paid to Carol Coggins by the carrier in July of 2004 and this too was disposed of by the Family Settlement Agreement that was signed a full year later. As this court knows a Life Insurance policy is contractual in nature and is not part of the [p]robate. There is no evidence of fraud or the exercise of undue influence in the naming of the beneficiary of the [l]ife [i]nsurance policy.

Relying on *Compania Financiara Libano v. Simmons* and *Amstadt v. U.S. Brass Corporation*, the Cogginses set out the elements of res judicata—final judgment, same parties, and same or related claims—and generally concluded in their prayer for relief that they believed they had "met the requirements of their [s]ummary [j]udgment based on [r]es [j]udicata. . . ." *See Compania Financiara Libano*, 53 S.W.3d 365, 367 (Tex. 2010) (per curiam); *Amstadt*, 919 S.W.2d 644, 652 (Tex. 1996). Regarding the third element, the Cogginses argued the following: "Mary Beth Nelson's real estate, personal property, animals[,] and [l]ife [i]nsurance [p]olicy were adjudicated and disposed of by agreement in the [p]robate matter. Those same issues are the nexis of the claims brought in this matter."[3]

The Cogginses filed the following evidence in support of their motion for summary

---

[3] In their motion for summary judgment, the Cogginses claimed that all matters, including the insurance proceed claim, were resolved in the will contest. They did not claim that Connie's fraud claim could have, with diligence, been brought in the prior litigation. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992) (setting out that res judicata bars related matters that should have been litigated in prior suit, with the use of diligence). Therefore, that issue is not before us. *See* Tex. R. App. P. 47.4.

4

judgment: (1) the agreed order of dismissal; (2) the Agreement; (3) Carol's affidavit; and (4) the transcript of the oral deposition of Michael Stukenberg, Connie's attorney for the will contest.[4]

### 2. Connie's Response to the Cogginses' Summary Judgment Motion

Connie responded to the summary judgment motion claiming, among other things, that the motion should be denied because her claim for the proceeds of insurance benefits was not based on the same claims raised in the will contest and it was not within the probate court's powers to adjudicate assets that were not assets of Mary Beth's estate. Evidence attached to Connie's response to the Cogginses' motion for summary judgment included excerpts of Stukenberg's deposition testimony and the affidavit of Lemer, in his capacity as the independent administrator of Mary Beth's estate.[5]

### 3. Disposition

The trial court granted a partial summary judgment, dismissing Connie's fraud claims. Connie's wrongful-conversion claims and the Cogginses' counterclaim remained. Shortly thereafter Connie died, and the trial court entered an order substituting Lemer as plaintiff. Lemer filed a motion for new trial, which the trial court denied. Lemer also filed a motion to sever. The trial court granted this motion and severed the fraud claims from the remaining claims. Thus, the summary judgment

---

[4] The Cogginses also attached the affidavit of Gordon Blaine Morgan, the Cogginses' attorney, to their motion. Morgan's affidavit set out that the attachments were true and correct copies of documents obtained through discovery or the deposition process. In addition, the motion listed the affidavit of Harley Coggins as an attachment. However, that affidavit is not part of the appellate record.

[5] In addition, Connie attached the affidavit of her attorney, Barney L. McCoy, in which he avowed that the facts and statements made in her response and the attached exhibits were true and correct.

became final as to the fraud claims. This appeal followed.[6]

## II. STANDARD OF REVIEW

To prevail on a traditional summary-judgment motion, movants must prove that there is no genuine issue regarding any material fact and that they are entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004). "A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense." *East Hill Marine, Inc. v. Rinker Boat Co., Inc.*, 229 S.W.3d 813, 815-16 (Tex. App.—Fort Worth 2007, pet. denied) (citing *Rhone-Poulenc, Inc. v. Ramirez*, 997 S.W.2d 217, 223 (Tex. 1999); *see* TEX. R. CIV. P. 166a(b), (c)); *see Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam). A matter is conclusively proven if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982). If the movant conclusively establishes that the action is barred by an affirmative defense, the non-movant must adduce summary-judgment proof raising a fact issue in avoidance of that affirmative defense. *See Motient Corp. v. Dondero*, 269 S.W.3d 78, 82 (Tex. App.—Dallas 2008, no pet.); *see also KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999). When deciding whether there is a disputed, material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

---

[6] Because the trial court severed Connie's fraud claims, matters related to her remaining wrongful conversion claims and the Cogginses' frivolous lawsuit claim are not before us.

6

Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In our review, we examine "'the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion.'" *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005)). Evidence favorable to the movant will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

### III. APPLICABLE LAW

To be entitled to summary judgment on the affirmative defense of res judicata, the movant must conclusively establish (1) a prior final judgment on the merits by a court of competent jurisdiction, (2) the same parties or those in privity with them, and (3) a second action based on a claim or cause of action that has been finally adjudicated or related matters that, with the use of diligence, should have been litigated in the prior suit. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992); *Kizer v. Meyer, Lytton, Alen & Whitaker, Inc.*, 228 S.W.3d 384, 391 (Tex. App.—Dallas 2007, no pet.); *see* TEX. R. CIV. P. 94 (identifying res judicata as an affirmative defense). The doctrine effectively requires that all theories of liability be brought in one suit. *Kizer*, 228 S.W. 3d at 391. The policies behind the doctrine reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery. *Id.* However, while res judicata bars related matters that should have been

7

litigated in a prior suit with the use of diligence, *see Barr*, 837 S.W.2d at 628, it does not bar "new" claims that did not exist when the trial court rendered judgment. *See Compania Financiara Libano,* 53 S.W.3d at 367.

In determining whether res judicata bars a subsequent lawsuit, Texas follows the "transactional" approach, which "provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Barr*, 837 S.W.2d at 631 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). A "'transaction or series of connected transactions' connotes a natural grouping or common nucleus of operative facts." RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b. In deciding whether a common nucleus of operative facts exists, we look to the factual predicate of the claims asserted and not the legal theory claimed by the plaintiff. *See Collins v. City of Corpus Christi*, 188 S.W.3d 415, 424 (Tex. App.—Corpus Christi 2006, no pet.); *see also In re Estate of Cantu*, No. 04-10-00389-CV, 2011 Tex. App. LEXIS 897, at *3-6 (Tex. App.—San Antonio Feb. 9, 2011, no pet.) (mem. op.) (determining that the judgment in a will contest was res judicata of a subsequent claim because the issue of whether Cantu's mark on his will was forged was an issue that, with reasonable diligence, could have been raised in the prior proceeding). We determine whether a transaction or a series of transactions exists "pragmatically, 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage.'" *Barr*, 837 S.W.2d at 631 (quoting RESTATEMENT (SECOND) OF

JUDGMENTS § 24(2)). "A determination of what constitutes the subject matter of a suit necessarily requires an examination of the factual basis of the claim or claims in the prior litigation." *Id.* at 630.

## IV. DISCUSSION

By his sole issue, Lemer contends that the trial court erred in granting the Cogginses' motion for summary judgment because Connie's claim for the proceeds of the insurance benefits does not involve the same claims that were at issue in the will contest. Lemer asserts that his fraud cause of action is not barred by res judicata because the will contest never included the issue of the Policy's beneficiary. Lemer argues that the will contest was based on facts that occurred on March 22 and 23, 2004, when the will, naming Carol as beneficiary of Mary Beth's estate, was allegedly executed by Mary Beth, and while the trial court would likely have considered fraud in making its determinations regarding the validity of Mary Beth's will in the will contest, Connie's claim of possible fraud because of Carol's and Harley's actions related to an insurance policy that designated Carol as the beneficiary, would have been outside the probate proceeding. In this summary judgment context, Lemer's issue challenges the trial court's summary judgment on the basis that the Cogginses did not conclusively prove the "same claims" element of their res-judicata affirmative defense. *See* TEX. R. CIV. P. 166a(b), (c)); *East Hill Marine, Inc.*, 229 S.W.3d at 815-16.

### A. The Cogginses' Summary Judgment Evidence

#### 1. The Agreed Dismissal Order in the Will Contest

We construe the agreed order of dismissal, like other written instruments, as a

9

whole toward the end of harmonizing and giving effect to all the court has written. *See Constance v. Constance*, 544 S.W.2d 659, 660 (Tex. 1976). The trial court's adjudication is to be determined from a fair reading of all the provisions of the order. *See id.*

According to the language of the dismissal order entered in this case, after granting the parties' joint motion to dismiss, the trial court dismissed Connie's contest to Carol's application to probate Mary Ellen's will. It also dismissed the Cogginses' counterclaim for attorney's fees and court costs. The agreed order was silent as to any settlement agreement. The order did not mention the dismissal of Connie's fraud claims involving insurance proceeds which, as both parties acknowledge, were outside the claims asserted in the will contest. Thus, we conclude that the agreed order of dismissal did not conclusively establish the third element of the Cogginses' res judicata defense.

## 2.    The Agreement

After setting out the chronology of events that occurred during the will contest, the Agreement generally provided that "Connie, Carol[,] and Harley (the "Parties") enter into this Family Settlement Agreement to resolve all claims of Connie, Carol[,] and Harley asserted in the . . . pleadings and claims to [Mary Beth's] Estate in general." The Agreement also included, among other things, the following provisions:

> 6.    Carol (personally or through her attorney) will bring to Michael W. Stukenberg's office within ten (10) days of the signing of this document any and all check records, bank statements, checks, check registers, credit card statements, receipts, tax returns, or any other financial information or personal papers of Connie or [Mary Beth] that are in Carol's possession, if any exist.

10

7.    Carol and Harley will retain any life insurance benefits, IRAs, annuities or other non-probate items that they received as a result of a beneficiary designation.

      . . . .

9.    Dismissal of Lawsuit.   The Parties agree to jointly dismiss the Opposition to Probate and Counterclaims pending in this cause . . . .

10.   . . . [E]ach of the Parties expressly releases the other from all claims, liabilities, debts and obligations, of every kind that have been or will be incurred, which relate to or arise from the death of Mary Beth Nelson or the administration of her Estate. It is the intent that each of the Parties accepts all the provisions of this Agreement in consideration of the full release and settlement of all claims and rights against the other. . . .

Our review of the Agreement, that was not a part of the probate's court record or its dismissal order, shows that the parties entered into the Agreement to determine claims raised by the pleadings in the will contest and to determine all claims to Mary Beth's estate, in general.  This language reflects that the Agreement was not entered into to resolve claims involving insurance proceeds because such claims were not raised by the pleadings and, being outside probate matters, were not claims of the estate.   In addition, by the specific language of paragraph 9, Connie agreed only to dismiss her opposition to the probate of the will naming Connie as sole beneficiary, and Carol and Harley agreed only to release their counterclaims.  Furthermore, while paragraph 6 states that Carol would provide Stukenberg with documents in her possession, it does not establish that she did so.  Paragraph 7 involves non-probate matters, and paragraph 10 arguably involves other matters that were not part of the probate proceeding.   Therefore, examining the Agreement in the light most favorable to Connie, and indulging every

11

reasonable inference and resolving any doubts against the Cogginses' motion, as we must in this summary judgment review, we conclude that the Agreement does not conclusively establish that the insurance fraud claims at issue in this case were adjudicated in the probate matter. *See Sudan*, 199 S.W.3d at 292.

Moreover, even were we to conclude that paragraphs 6, 7, and 10 of the Agreement conclusively established the same-claim element of res judicata, this evidence was controverted by Stukenberg's deposition testimony and Lemer's affidavit discussed below. Taking this evidence favorable to Connie as true, Connie adduced summary-judgment proof raising a fact issue in avoidance of res judicata, and the trial court erred in granting summary judgment on this basis as well. *See Nixon*, 690 S.W.2d at 548-49; *Motient Corp.*, 269 S.W.3d at 82; *see also KPMG Peat Marwick*, 988 S.W.2d at 748.

### 3.      Carol's Affidavit

Carol's affidavit concluded the following:   (1) all disputed issues, including the life insurance, were discussed, agreed to, and formalized in the Agreement, which was binding on all parties, and the insurance issues were dismissed; and (2) the present case is based on the same issues settled in July of 2005.   These conclusory statements made by Carol, an interested party, were also controverted by competent summary judgment proof set out below. *See Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47; *Sudan*, 199 S.W.3d at 292; *see also* TEX. R. CIV. P. 166a(c); *Haynes v. City of Beaumont*, 35 S.W.3d 166, 178 (Tex. App.—Texarkana 2000, no pet.) (noting that an affidavit that is clear, positive, direct, credible, free from contradiction, and that could have been readily

controverted can serve as competent summary judgment proof); *Galvan v. Pub. Utils. Bd.*, 778 S.W.2d 580, 583 (Tex. Civ. App.—Corpus Christi 1989, no writ) (holding that an uncontroverted affidavit of an interested party will support a summary judgment in the absence of a controverting affidavit). Therefore, we conclude that Carol's affidavit provides no support for her motion for summary judgment.

### 4. Stukenberg's Deposition Testimony[7]

Stukenberg, who represented Connie in the will contest, described the underlying contest as "a probate conflict regarding a dispute over the admission of a purported will of Mary Beth Nelson into probate." Stukenberg testified that the Agreement was to settle the probate issues; to release "any claims that exist[ed] at that time relating to the probate matter." And, according to Stukenberg, the proceeds from an insurance policy "would not be part of the probate if there was a beneficiary designation that passed it to someone other than the Estate," as in this case.

When asked if he received any of Mary Beth's or Connie's financial information or personal papers in Carol's possession, Stukenberg responded that although requests for such production had been made of Carol, he had no knowledge of receiving such information, and he had no such documents in his file. In addition, when asked to respond to the provision stating that Carol and Harley would retain any life insurance benefits as a result of a beneficiary designation, Stukenberg answered that he had been trying to find information about life insurance policies, but did not have specific knowledge about specific policies. Stukenberg explained that when he helped to prepare the

---

[7] The exhibits admitted at Stukenberg's deposition are not part of the appellate record.

Agreement, the insurance policy purportedly insuring Mary Beth in the amount of $100,000.00 was unknown to him, and he did not know whether Connie knew about it.

We disagree with the Cogginses that Stukenberg's testimony conclusively established the third element of their res judicata affirmative defense. *See Kizer*, 228 S.W.3d at 391. Stukenberg's testimony did not conclusively establish that the fraud claim existed when the trial court rendered judgment. *See Barr*, 837 S.W.2d at 628; *Compania Financiara Libano,* 53 S.W.3d at 367. His testimony did not support a conclusion that, based on the operative facts of each claim, a common nucleus of operative facts between the will contest claims and the fraud claims existed, *see Collins*, 188 S.W.3d at 424; *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 24 cmt. b, or that the claims in the prior litigation and the claims in this litigation were related in "time, space, origin, or motivation." *See Barr*, 837 S.W.2d at 630-31.

## B.    Connie's Summary Judgment Evidence

### 1.    Stukenberg's Deposition Testimony

Connie supported her response with the following excerpts from Stukenberg's deposition testimony: (1) Stukenberg did not recall ever receiving any of Connie's financial information or personal papers that were in Carol's possession; (2) at the time the Agreement was drafted, Stukenberg did not know that Mary Beth carried a life insurance policy although he had been trying to find information about any such policy; (3) Stukenberg agreed that the parties dismissed litigation that was going on prior to the Agreement; and (4) Stukenberg explained that an insurance policy would "pass outside of probate" if there is a beneficiary designation that designates someone other than the

estate, as in this case.

### 2. Lemer's Affidavit

Through his affidavit, Lemer stated the following:

> During the course of the [w]ill contest between [Connie, Carol, and Harley], [Connie] was never made aware of any life insurance policy. Insurance policies were not an issue in the [w]ill contest. At that time, Carol . . . had in her possession many financial documents and records belonging to both Mary Beth Nelson and [Connie]. As Independent Administrator, I had the obligation to prepare an inventory and appraisal of the assets of the Estate, and therefore made requests for records from various banks, insurance companies, credit card companies, doctors and hospitals, etc. . . .

From the requested records, Lemer discovered the following: (1) Mary Beth took out a $100,000 life insurance policy with Midland National on January 21, 1992, naming as beneficiary, Connie (70%), Mary E. Nelson (10%), William H. Roberts, III (10%), and Shelva Jean Herpick (10%); (2) Mary Beth was diagnosed with end-stage cirrhosis of the liver in November 2003; (3) Mary Beth had medical problems beginning on March 22, 2004 that required hospitalization and care that resulted in her mental and physical condition deteriorating; (4) on April 12, 2004, Mary Beth purportedly changed the beneficiary designation of her $100,000 insurance policy with Midland National to Carol (100%); (5) Mary Beth died of liver failure on June 22, 2004; (6) on July 8, 2004, Carol submitted proof of Mary Beth's death to Midland National; and (7) the proceeds of the Policy were paid to Carol on July 21, 2004. Lemer concluded his affidavit by stating that "[a]ll of the information . . . concerning fraud . . . was discovered only after [he] was appointed [i]ndependent [a]dministrator of the [e]state of Mary Beth Nelson, Deceased, and all of said facts were unknown to Constance L. Nelson until they were discovered by

15

[Lemer] while carrying out [his] duties as [i]ndependent [a]dministrator."

**C. Summary**

Based on the above analysis, we cannot conclude that the Cogginses have conclusively established that Connie's fraud claims arose out of the same subject matter as the will contest. Accordingly, the trial court erred in granting summary judgment in favor of the Cogginses on the basis of res judicata. We sustain Lemer's sole issue.

## IV. CONCLUSION

We affirm the trial court's judgment on Connie's undue influence and fraud claims that challenged Mary Beth's 2004 will. We reverse and remand the judgment on all other fraud claims.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 4th
day of October, 2012.

16