# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00735-CV

**Cottonwood Development Corporation, Appellant**

**v.**

**Preston Hollow Capital, LLC; PHCC LLC; and Winstead, P.C., Appellees**

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 22-1985-C368, THE HONORABLE RICK J. KENNON, JUDGE PRESIDING

## O P I N I O N

This appeal arises from a dispute over financing of a real-estate development. Cottonwood Development Corporation appeals the summary-judgment orders granted in favor of Preston Hollow Capital, LLC; PHCC LLC (collectively Preston Hollow); and Winstead, P.C.[1] Additionally, Cottonwood appeals the orders denying its combined plea in bar and motion for summary judgment, its motion for reconsideration, the final judgment and order of foreclosure, and the postjudgment orders denying its motion for injunctive relief and motion to set aside the deeds of trust.[2] We will affirm the district court's orders and final judgment.

---

[1] As part of a corporate restructuring unrelated to the transaction at issue in the parties' litigation, Preston Hollow Capital, LLC assigned its interest in the transaction (along with the loan agreement and related loan documents) to PHCC LLC, effective January 1, 2022.

[2] Cottonwood's amended notice of appeal purports to appeal the final judgment and ten orders. No argument is presented in Cottonwood's brief as to five orders. The January 19, 2022 order granting summary judgment to Longhorn Title and the April 26, 2022 unopposed order

## BACKGROUND[3]

In April 2019, the City of Hutto announced "Project Expansion," a planned mixed-used development on 250 acres of unimproved land near the intersection of US Highway 79 and County Road 132. Perfect Game, a baseball-scouting company, intended to relocate its national headquarters to Hutto as the anchor tenant. To facilitate the project, the City created Cottonwood, a local-government corporation. *See generally* Tex. Transp. Code § 431.101 ("Creation of Local Government Corporations"). The general structure of the project required the City to purchase tracts of land that it would consolidate for the project. To proceed with the project, the City planned to borrow funds for the land acquisitions.

Preston Hollow is a non-bank finance company that funds economic development and infrastructure projects for municipal governments and development corporations. Cottonwood approached Preston Hollow Capital in December 2019 for "emergency, almost-

---

modifying that summary-judgment order are referenced only as background information, and those orders were appealed separately. *See Cottonwood Dev. Corp. v. Longhorn Title Co*., No. 03-23-00032-CV, 2024 WL 1334327, at *3 (Tex. App.—Austin Mar. 29, 2024, pet. denied) (mem. op.). Additionally, the June 2, 2022 order denying Cottonwood's motion to strike PHCC LLC's petition in intervention, and the December 13, 2022 postjudgment orders denying Cottonwood's "Motion to Set Aside Deeds of Trust Validated Within the Court's Judgment to Permit the Sale of Property and to Place Net Proceeds in the Court's Registry in Sufficient Amounts to Satisfy Judgment in the Event of a Final Judgment in Favor of Preston Hollow" and "Motion for Temporary and Permanent Injunction Suspending the Judgment by Operation of Law and Preventing Issuance of Order of Sale by the District Court" are not briefed and thus, complaints as to those orders are waived. *See* Tex. R. App. P. 38.1(i) (requiring briefs to contain argument for contentions made, along with appropriate citations to authorities and record); *Harrison v. Bentley Ltd*., No. 05-00-01794-CV, 2001 WL 1360206, at *3 (Tex. App.—Dallas Nov. 7, 2001, no pet.) (mem. op.) (concluding that party who failed to brief argument as to denial of motion to strike plea in intervention waived that appellate complaint).

[3] This background is taken from the pleadings and the related state and federal cases concerning this dispute. *See, e.g.*, *Preston Hollow Cap., LLC v. Cottonwood Dev. Corp*., No. 1:20-CV-00978-LY-SH, 2021 WL 812114, at *2 (W.D. Tex. Mar. 2, 2021), *aff'd*, 23 F.4th 550 (5th Cir. 2022); *Cottonwood Dev. Corp.*, 2024 WL 1334327, at *1-2.

immediate alternate financing" of the project after other planned financing failed. In January 2020, Preston Hollow provided Cottonwood and the City with a Term Sheet for the project, summarizing the terms and conditions of a proposed finance plan for the Perfect Game project.

The Term Sheet stated that the City would take certain actions by the closing date, including entering into a grant agreement under Texas Local Government Code Chapter 380 (which would provide for 75-100% of the City's portion of ad valorem taxes on certain land related to the project to offset any special assessments, or to finance or reimburse costs related to the project), and granting Preston Hollow the exclusive right to finance a public-improvement district or tax-increment-reinvestment-zone loan or issue bonds of approximately $220 million.

Cottonwood's board of directors passed Resolution No. R-20-01-27-3A on January 27, 2020, approving the proposal and directing Cottonwood's chair to sign it. The same day, Cottonwood's board approved Resolution No. R-20-01-27-3F authorizing four board members "Chair Doug Gaul [who was also the City Mayor], Charles Daniels, Byron Frankland or Michel Sorrell" to "act as agents on behalf of [Cottonwood] in matters involving Project Expansion - Perfect Game Project, with specific authority granted to sign deeds, mortgages, financing documents and all other documents related to work on Project Expansion - Perfect Game Project." Mayor Gaul executed the Term Sheet on January 28, 2020, on behalf of the City and Cottonwood.

**Cottonwood and Preston Hollow close on loan**

After execution of the Term Sheet, Preston Hollow began structuring the public-finance deal for the project. The parties to the loan transaction each had their own counsel. McGinnis Lochridge represented the borrower, Cottonwood. Winstead represented the lender, Preston Hollow. Cottonwood and Preston Hollow executed a series of loan documents on February

13, 2020, including a Loan Agreement, Promissory Note, First and Second Lien Deeds of Trust, and an Interlocal Agreement between the City and Cottonwood "to administer certain matters related to [Cottonwood] for the development of the Project."

Under the Loan Agreement, Preston Hollow agreed to loan up to $35 million to Cottonwood with an initial advance of $15 million and the possibility of further advances if certain conditions were met. Section 3.1 of the Loan Agreement directed how some of the $15 million initial advance "shall be applied": $12,029,000 to purchase two tracts of land; "approximately $1,100,000.00 to reimburse contractors for costs related to the Project"; "approximately $1,070,000 for expenses that [the] City incurred or will incur as with regard to [sic] due diligence costs related to the Project"; and $630,000 to settle a lawsuit related to the project. After subtracting these amounts from the initial advances, $171,000 remained. The Loan Agreement addressed events of default, including if (1) the City failed to enter into a grant agreement under Chapter 380 of the Local Government Code within 60 days after February 13, 2020; or (2) Preston Hollow determined that any of Cottonwood's or others' representations, warranties, or statements in the loan documents were materially false or misleading, and resulted or had the potential to result in a material adverse change.

Longhorn Title was the title company and closing agent for the loan transaction between Cottonwood and Preston Hollow. Longhorn Title's disbursement of the funds was addressed in the Closing Statement. Line 120 of the Closing Statement specified that $12,445,038.24 would be paid for Cottonwood's settlement charges (items referenced in Section 3.1 of the Loan Agreement) and Line 303 specified that $2,554,961.76 would be paid to Cottonwood directly. Another section of the Closing Statement listed the settlement costs to be paid from each parties' funds. Among the costs to be "paid from Borrower's funds at settlement"

was $60,000 in attorney's fees to Winstead. Board Member Frankland signed the Loan Agreement and the Closing Statement for Cottonwood.

Winstead attorney Beth E. Thurman emailed a letter to Longhorn Title on February 12, 2020, with instructions for closing the loan transaction. The Closing Instructions specified that Longhorn Title could disburse the funds only after it: (1) received Preston Hollow's written approval of the Closing Statement; (2) received "funds sufficient to pay all closing costs reflected on the Closing Statement, including . . . legal fees charged by Winstead PC, as attorney for [Preston Hollow], as set forth on the Closing Statement"; and (3) was advised in writing by Thurman "that all conditions precedent to the closing have been satisfied." Longhorn Title was to indicate its agreement by signing and returning the Closing Instructions.

Longhorn Title employee Chasaty Huckabay first asked McGinnis Lochridge attorney Mary H. Allen by email whether the Closing Statement met expectations, including deduction of fees from the initial advance: "Mary - this is how I structured the HUD [Closing Statement] prior to this morning. I think this is what you were expecting? I would take the fees/purchase prices out of the initial advance and owe Cottonwood the difference?" Allen replied, "Yes. This is the expectation of Borrower." Huckabay signed and returned a copy of the Closing Instructions to Winstead the next day. She sent a copy of the signed Closing Instructions letter to counsel for both parties and three Preston Hollow employees: John Dinan, Michel Benitez, and Glen Hill. The day after that, before closing of the loan transaction, Winstead attorney Jeff Nydegger sent Winstead's $60,000 attorney's fees invoice to Longhorn Title; the City; Huckabay; the City's director of economic development, Jessica (Geray) Bullock; and three attorneys at McGinnis Lochridge.

5

On February 14, 2020, William H. Bingham of McGinnis Lochridge, acting as counsel for both the City and Cottonwood for this transaction, sent opinion letters to Preston Hollow—after reviewing the Loan Documents,[4] Cottonwood's organizational documents, resolutions approved by Cottonwood's board of directors, City Council Resolution No. R-20-02-06-11D, the City's Diligence Certificate, and other "relevant" documents—stating that the Loan Documents were "valid and binding" obligations of the borrower Cottonwood and that the City had taken or obtained all legally required approvals and authorizations as to its obligations:

> Each Loan Document to which the Borrower is a party constitutes the valid and binding obligation of the Borrower enforceable against the Borrower in accordance with its terms.
>
> . . . .
>
> The City has taken or obtained all actions, approvals, consents and authorizations required of it by applicable laws in connection with the enactment of the Resolution and the execution and delivery of the Interlocal Agreement, the Collateral Assignment and the Omnibus Amendment, and the performance by the City of its obligations thereunder.[5]

---

[4] The "Loan Documents" consisted of 12 items listed in Exhibit A of the opinion letter for Cottonwood: (1) the Loan Agreement; (2) Promissory Note; (3) First Lien Security Instrument; (4) Second Lien Security Instrument; (5) Interlocal Agreement; (6) Environmental Indemnification Agreement; (7) Collateral Assignment of Contracts; (8) Consent and Subordination Agreement of Multi-Party Developer; (9) UCC-1 Financing Statement pursuant to the First Lien Security Instrument; (10) UCC-1 Financing Statement pursuant to the Second Lien Security Instrument; (11) Intercreditor Agreement, and (12) Omnibus Amendment to Loan Documents and Interlocal Agreement dated February 14, 2020 by and between the Lender, the Borrower and the City.

[5] Cottonwood and the City made similar representations in the Loan Agreement, stating:

- All acts, conditions and things required by law to exist, to have happened and to have been performed precedent to and in connection with the execution and delivery of this Agreement do exist, have happened and have been performed in regular and due time, form and as required by law, and the parties hereto are now duly authorized to execute and enter into this Agreement;

Also on February 14, 2020, Cliff Ernst of McGinnis Lochridge sent an email to Jeff Nydegger of Winstead—copied to Huckabay and Cottonwood Board Members Frankland and Michel Sorrell—confirming that "the Borrower [Cottonwood] is also agreeable to holding the amount [$2,554,961.76] show[n] on Line 303 of the Closing Statement in Escrow with the Title Company [Longhorn Title] pending further joint release instructions further instructions [sic] from the Borrower and Lender [Preston Hollow]." This escrow agreement was reiterated soon afterward in an email sent from Bullock, the City's director of economic development, to Huckabay, McGinnis Lochridge counsel, Winstead counsel, and Preston Hollow staff stating, "Borrower agrees funds shown in 3.03 [sic] of closing statement will be held in escrow until post closing[,] pending post closing instructions from the borrower and lender." Later that day, Ernst sent an email to all parties and counsel approving the closing of the loan.

Minutes after receiving that approval from McGinnis Lochridge, Michel Benitez of Preston Hollow sent an email to Huckabay confirming that closing conditions were satisfied and authorizing Longhorn Title's funding of a portion of the initial advance to Cottonwood:

> I am writing in reference to the attached Closing Instructions, which originally directed Longhorn Title to fund the [$15 million] Initial Advance upon satisfaction of the conditions specified therein, at direction of Preston Hollow.
>
> By this email, we hereby confirm that all closing conditions have been satisfied and you are hereby authorized to fund a portion of the Initial Advance equal to

---

- Validity of Loan Documents. [Cottonwood] has all requisite power, authority, and legal right to execute and deliver the Loan Documents, and all other instruments and documents to be executed and delivered by [Cottonwood] pursuant thereto and to perform and observe the provisions thereof and to carry out the transactions contemplated by the Loan Documents; and

- The Loan Documents constitute the legal, valid and binding obligations of [Cottonwood], and others obligated under the terms of the Loan Documents, enforceable in accordance with their respective terms.

$12,445,038.24, for the payment of the Settlement Charges of Borrower [Cottonwood], as indicated in Line 120 of the [Closing] Statement.

As for the remaining $2,554,961.76 of the Initial Advance, indicated as "Cash to Borrower" in line 303 of the [Closing] Statement, we direct you to continue to hold such funds in escrow until authorized to release by Preston Hollow in writing, such authorization to be conditioned upon receipt of evidence satisfactory to Preston Hollow that such remaining funds shall be used to pay for costs of the Project previously incurred by the City or the Borrower [Cottonwood].

Longhorn Title paid the Line 120 funds of $12,445,038.24 as outlined in the Closing Statement, including the $60,000 in attorney's fees to Winstead. Preston Hollow never instructed Longhorn Title to disburse the remaining $2,554,961.76 held in escrow.

**Preston Hollow alleges default, but Cottonwood alleges loan documents are unenforceable**

Cottonwood alleges that on April 24, 2020, it requested that Preston Hollow disburse the remaining $2,554,961.76 in escrowed funds to pay contractors' invoices. Preston Hollow contends that Cottonwood made that demand for release of the escrowed funds without providing public-purpose documentation required under the Loan Agreement.

On April 30, 2020, Preston Hollow gave Cottonwood notice of default under the Loan Agreement, alleging that the City failed to enter into the Chapter 380 grant agreement with Preston Hollow within the 60-day deadline (April 13, 2020) required by the Interlocal Agreement, and that Cottonwood made false or misleading representations as to the validity of the loan documents. Preston Hollow also gave Cottonwood notice of intent to accelerate the note and declare the unpaid principal balance of $15 million, plus $377,500 in unpaid interest, immediately due and payable if Cottonwood did not repay the disbursed funds within ten days. Cottonwood did not repay the funds.

8

On May 4, 2020, Preston Hollow requested that Longhorn Title return the remaining $2,554,961.76 in escrowed funds. On May 5, 2020, interim City Manager Charles W. Daniels wrote to Longhorn Title on behalf of Cottonwood, stated that Cottonwood disputed the alleged default, and requested retention of the funds until resolution of the matter with Preston Hollow. Longhorn Title complied.

The next week, Preston Hollow gave notice of its intent to foreclose on the mortgaged property purchased for the project. On May 14, 2020, Cottonwood and the City responded through a new City Attorney, Dorothy Palumbo, that the intended foreclosures would be unlawful and that the loan documents "are void or voidable" because:

(1) neither Cottonwood's nor the City's governing bodies complied with the Texas Open Meetings Act (TOMA), Tex. Gov't Code §§ 551.001-.146, by properly posting that those documents were to be considered;

(2) neither Cottonwood nor the City requested review or approval of the loan documents by the Texas Attorney General and no such approval was obtained;

(3) the Interlocal Agreement that Preston Hollow asserted as grounds for default was not the version presented to and authorized by the City Council;

(4) the purported event of default by the City was not an event of default in the Interlocal Agreement presented to the City Council;

(5) the Interlocal Agreement impermissibly purported to delegate key government functions;

(6) it was questionable whether land owned by Cottonwood or the City, which is immune from liens and foreclosure when owned by a governmental entity, could be subject to foreclosure by foreclosing on contracts for the purchase of those lands, particularly when the Texas Attorney General had not reviewed and approved the note and contract authorizing the note; and

(7) Winstead "apparently" represented Cottonwood, the City, and Preston Hollow in the closing and related transactions from which the threatened foreclosure arose, and per the disbursement records from closing, Winstead "appears to have received" $60,000 from loan disbursements that should have gone to Cottonwood for providing legal services to the two government entities related to these transactions, even though

9

(a) no record had been found showing that either government entity gave informed consent to the joint representation or authorized the separate representations;

(b) no written agreement had been found showing that the City or Cottonwood retained Winstead or authorized Winstead's compensation for performing legal services to either government entity, so Winstead's payment from government funds was unlawful; and

(c) Winstead should not be representing Preston Hollow adverse to the City or Cottonwood as to the same transaction on which it purportedly represented the two government entities.

Lastly, Palumbo stated that Cottonwood and the City were "interested in scheduling a meeting to consider a financial work-out" addressing the problems in the Loan Agreement.

Preston Hollow disputed the assertions that the loan documents were void or voidable (noting that those assertions were contrary to the terms and conditions of the loan documents, representations from Cottonwood's representatives during loan negotiations, and legal opinions from Cottonwood's legal counsel); disagreed that there had been any TOMA violation because the loan and the pledge of collateral were properly noticed on the agenda for a January 27, 2020 meeting of Cottonwood's Board of Directors; and contended that because the loan was not a negotiable instrument, it could not be a public security under Chapter 1371 of the Local Government Code and the Texas Attorney General's approval of it was unnecessary. Moreover, Preston Hollow denied that Winstead ever represented Cottonwood or the City in connection with the Perfect Game project, or any other transaction, and noted that the $60,000 attorney's fees payment to Winstead had been approved by the City Council as well as Cottonwood's Board of Directors and was incorporated by reference into the Interlocal Agreement. Preston Hollow then renewed its demand for return of the disbursed funds. Cottonwood refused.

**Federal-court litigation[6]**

In September 2020, Preston Hollow sued Cottonwood and the City in federal district court for unconstitutional taking of private property. Preston Hollow alleged that Cottonwood and the City committed a per se taking in violation of the Fifth Amendment of the United States Constitution by refusing to return the $12,445,038.24 of disbursed funds and preventing return of the $2,554,961.76 in escrowed funds after Preston Hollow gave notice of Cottonwood's alleged default under the Loan Agreement. Cottonwood asserted state-law counterclaims, including requests for declarations under the Uniform Declaratory Judgments Act that the loan transaction was invalid, *see generally* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011 (UDJA); breach-of-contract claims based on Preston Hollow's alleged failures to fully fund the initial advance of $15 million and to allow an opportunity to cure before accelerating the note and demanding payment; and claims for alleged meeting and notice violations of TOMA.[7]

Cottonwood and the City sought dismissal of Preston Hollow's claim because it had not alleged facts necessary to support an unconstitutional taking, thereby eliminating the basis for any federal-question subject-matter jurisdiction. After determining that Cottonwood's and the City's "jurisdictional arguments [we]re 'completely intermeshed' with whether Preston Hollow ha[d] alleged a plausible claim for relief," a magistrate judge issued a report and recommendation concluding that Preston Hollow's takings claim—the only claim pleaded—was not facially plausible because Preston Hollow received contractual rights under the Loan Agreement in

---

[6] This background section is taken from the related federal court cases and pleadings. *See Preston Hollow*, 2021 WL 812114, at *4-6; *see also* 23 F.4th at 552-54.

[7] About one month after Cottonwood filed its federal-court counterclaims, Cottonwood's Board passed a resolution stating that its arrangement with Preston Hollow was based on "a legally defective transaction."

11

exchange for its funds, including a Promissory Note obligating Cottonwood to repay the debt. The magistrate noted that after Cottonwood's alleged default, Preston Hollow alleged that it accelerated the Promissory Note and exercised its rights and remedies available under the loan documents, which were rights Preston Hollow received in exchange for providing $15 million to Cottonwood.

The magistrate also noted that a takings claim is improper if it duplicates a breach-of-contract claim and a breach-of-contract remedy is available to the claimant. Because "Preston Hollow merely allege[d] a claim for Cottonwood's breach of the loan agreement," the magistrate recommended dismissal for failure to state a claim. The magistrate recommended dismissal of Cottonwood's counterclaims as well, recognizing that when a court disposes of the claim supplying federal subject-matter jurisdiction, exercise of supplemental jurisdiction over any state-law claims is discretionary, and the Fifth Circuit generally favors dismissal when all federal claims have been dismissed and only pendent state-law claims remain.

Objecting to the magistrate's report and recommendation, Preston Hollow argued that a breach-of-contract claim was precluded because Cottonwood and the City repeatedly asserted that the loan documents were void. Preston Hollow noted in its objections that it "had not challenged or disputed in this lawsuit [Cottonwood and the City's] claim that all agreements between them are 'void.'" Here, Cottonwood contends that Preston Hollow's statement constituted a "judicial admission" that all the loan documents are void.

On March 31, 2021, the federal district court signed an order and a final judgment that overruled Preston Hollow's objections, adopted the magistrate's recommendation, dismissed Preston Hollow's suit with prejudice, dismissed pending motions, awarded court costs to Cottonwood and the City, and declined to exercise supplemental jurisdiction over their counterclaims. Preston Hollow appealed.

12

After oral argument, the Fifth Circuit Court of Appeals affirmed the dismissal, stating that "a government must be acting in its sovereign capacity to effect a taking," "all of the misconduct alleged in the complaint involves 'commercial' and not 'sovereign' acts," and "any claim that [Preston Hollow] may have asserted should be a breach of contract claim, not a taking claim." When making this ruling, the Fifth Circuit noted, "We do not address what effect, if any, this dismissal might have on potential claims that are not before us."

**State district-court litigation**

In January 2021, while the federal litigation was ongoing, Longhorn Title filed an interpleader action against Cottonwood and Preston Hollow seeking to deposit the disputed funds into the registry of the court. *See FinServ Cas. Corp. v. Transamerica Life Ins. Co.*, 523 S.W.3d 129, 141 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (noting that "[u]nder Texas Rule of Civil Procedure 43, a party who receives multiple claims to funds in its possession may join all claimants in one lawsuit and tender the disputed funds into the registry of the court"); *see also* Tex. R. Civ. P. 43 (providing for interpleader).

Cottonwood answered and counterclaimed for conversion against Longhorn Title, disputing the $60,000 in attorney's fees paid to Winstead. Next, Cottonwood filed a third-party claim against Winstead for conversion and civil conspiracy and sought declaratory relief. Cottonwood then filed a cross-claim against Preston Hollow for breach of contract and TOMA violations; requested UDJA declarations that the notice of foreclosure, the Interlocal Agreement, the Loan Agreement, and "related instruments" are void; and sought, among other relief, release of all liens on the mortgaged property.

Preston Hollow then filed its own cross-claims against Cottonwood for breach of contract, and seeking UDJA declarations that (1) it is the lawful owner of, and is legally entitled to recover, the $2,554,961.76 at issue in Longhorn Title's interpleader action, plus an award of attorney's fees and expenses; (2) it was legally entitled to foreclose on the mortgaged property; (3) the Loan Agreement and all other loan documents were valid and enforceable; (4) all liens it recorded on the mortgaged property were valid and enforceable; and (5) the mortgaged property was validly purchased by Cottonwood and/or the City.[8]  Alternatively, if the Loan Agreement and loan documents were void or unenforceable, Preston Hollow asserted that it was entitled to recover against Cottonwood under the equitable theories of *quantum valebant* (for money had and received)/quantum meruit and implied contract.

The parties filed numerous motions and supporting briefs, including cross-motions for summary judgment.  Preston Hollow filed a traditional summary-judgment motion on the interpleader claim and on its cross-claim seeking declaration as the lawful owner of the $2,554,961.76 in escrowed funds.  Preston Hollow contended that as a matter of law under the doctrine of quasi-estoppel, Cottonwood could not maintain a claim to the escrowed funds and simultaneously seek to void the Loan Agreement.  *See Forney 921 Lot Dev. Partners I, L.P. v. Paul Taylor Homes, Ltd.*, 349 S.W.3d 258, 268 (Tex. App.—Dallas 2011, pet. denied) (noting that quasi-estoppel precludes party from asserting, to another's disadvantage, right that is inconsistent with position previously taken).  Preston Hollow asserted that this doctrine barred Cottonwood from taking the contradictory positions that the Loan Agreement is void, while simultaneously seeking to recover the escrowed funds under that same Loan Agreement.  *See San Antonio Sav. Ass'n v.*

---

[8] Because PHC, LLC later joined these claims as an Intervenor, we still refer to Preston Hollow collectively here.

*Palmer*, 780 S.W.2d 803, 810 (Tex. App.—San Antonio 1989, writ denied) (holding that "[I]it would be unfair and unconscionable to allow plaintiffs to pocket $2,400,000.00 of SASA's money while voiding the deed of trust against the Bandera Road property. They are not entitled to keep both the land and the money. It is as simple as that.").[9]

Preston Hollow also filed a separate traditional summary-judgment motion as to its cross-claims for breach of contract and requested declarations as to the validity and enforceability of the Loan Agreement, loan documents, and recorded liens on the mortgaged property; the validity of Cottonwood's/the City's purchase of the property; and Preston Hollow's entitlement to foreclose on the mortgaged property.[10]

Cottonwood filed a combined plea in bar and summary-judgment motion and later, a separate summary-judgment motion, primarily contending, as we will discuss further, that Preston Hollow's claims were barred by res judicata or void, that Preston Hollow breached first, and that Winstead was not entitled to its affirmative defense of attorney immunity.

---

[9] Preston Hollow's evidence included a declaration from its managing director Ramiro Albarran, with attached copies of the Term Sheet, Closing Instructions, Loan Agreement, Note, Environmental Indemnity Agreement, First and Second Deeds of Trust, Interlocal Agreement, Closing Statement, McGinnis Lochridge attorney Cliff Ernst's February 14, 2020 email confirming that Longhorn Title should hold funds pending further instruction, Notice of Default, Request for Return of Escrowed Funds, Response to Request for Return of Escrowed Funds, Notice of Intent to Foreclose, and Dorothy Palumbo's May 14, 2020 and May 20, 2020 letters asserting invalidity of the loan documents and requesting stay of foreclosure.

[10] Preston Hollow's evidence included Albarran's declaration with attached copies of the Notice of Default, Notice of Intent to Foreclose, Loan Agreement, Note, First and Second Deeds of Trust, Interlocal Agreement, Closing Statement, Ernst's February 14 email, Palumbo's May 14 and May 20 letters, and the opinion letters from McGinnis Lochridge attorney William H. Bingham stating that the loan documents were Cottonwood's "valid and binding" obligations and that the City had taken or obtained all requisite approvals or authorizations as to its obligations.

**District-court's interlocutory orders and final judgment**

The parties' litigation resulted in a series of district-court rulings, including:

(1) a November 1, 2021 order granting Winstead's motion for summary judgment as to its $60,000 of attorney's fees, ruling that Cottonwood take nothing on its claims against Winstead, and dismissing those claims with prejudice;

(2) a November 1, 2021 order granting "Preston Hollow Capital LLC's Amended Motion for Summary Judgment," awarding judgment in Preston Hollow's favor on all claims asserted in its original crossclaim, declaring Preston Hollow the lawful owner of the $2,554,961.76 in escrowed funds that were the subject of Longhorn Title's interpleader petition, and awarding related attorney's fees;

(3) a March 14, 2022 order denying Cottonwood's "Motion to Reconsider Summary Judgment Order Granting Summary Judgment to Preston Hollow Capital on the Basis of Res Judicata";

(4) a July 22, 2022 order denying Cottonwood's "Plea in Bar on the Basis of Res Judicata and Motion for Summary Judgment";

(5) an August 18, 2022 order granting "Preston Hollow Capital LLC and PHCC LLC's Motion for Summary Judgment," awarding judgment in Preston Hollow's favor on all remaining issues involving Cottonwood; declaring the validity and enforceability of the loan documents, and authorizing Preston Hollow to proceed with foreclosure on the real property pledged as security for Cottonwood's debt; and

(6) a November 9, 2022 "Final Judgment and Order of Foreclosure"

    (i) incorporating and attaching prior orders (ruling in Preston Hollow's favor as to its breach-of-contract claim, request for judicial foreclosure, and declaratory judgment regarding the escrowed funds, loan agreement, and loan documents) and concluding that Preston Hollow's equitable claims, pleaded in the alternative, were moot;

    (ii) incorporating and attaching prior orders (ruling in Preston Hollow's favor as to Cottonwood's request for declaratory judgment; claims based on breach of contract, mutual mistake, violation of TOMA; "Supplemental Claims," and requests for injunctive relief, fees, costs, and damages) and ruling that all claims were dismissed with prejudice and that Cottonwood "shall take nothing and shall recover no damages on its claims against Preston Hollow";

    (iii) restating the declarations as to the validity and enforceability of the loan documents and authorizing Preston Hollow to proceed with foreclosure;

(iv)     awarding Preston Hollow judgment of $18,476,927.26 from Cottonwood for the unpaid loan principal and accrued but unpaid interest through September 12, 2022, plus per diem interest under the Loan Agreement of $7,500 starting September 13, 2022, and continuing until the judgment is satisfied;

(v)      awarding Preston Hollow attorney's fees and expenses of $784,356.33 from Cottonwood plus contingent appellate fees of $195,000.00; and

(vi)     ordering foreclosure of the mortgaged property, with proceeds of a foreclosure sale applied to the debt owed to Preston Hollow by Cottonwood.

On the same day that the district court signed the judgment finalizing the interlocutory orders, the district court granted Cottonwood's motion to sever its claims against Preston Hollow and Winstead from Longhorn Title's interpleader action. *See Cottonwood Dev. Corp. v. Longhorn Title Co.*, No. 03-23-00032-CV, 2024 WL 1334327, at *2 (Tex. App.—Austin Mar. 29, 2024, pet. denied) (mem. op.) (noting severance).

After the final judgment, Cottonwood filed a "Motion to Set Aside Deeds of Trust Validated Within the Court's Judgment to Permit the Sale of Property and to Place Net Proceeds in the Court's Registry in Sufficient Amounts to Satisfy Judgment in the Event of a Final Judgment in Favor of Preston Hollow" and a "Motion for Temporary and Permanent Injunction Suspending the Judgment by Operation of Law and Preventing Issuance of Order of Sale by the District Court." The district court denied the motions December 13, 2022, in separate orders.[11]

---

[11] Cottonwood satisfied the judgment on the eve of a scheduled foreclosure sale, informed this Court of the payment, and stated its continued interest in this appeal. *Cottonwood Dev. Corp. v. Preston Hollow Cap., LLC*, No. 03-22-00735-CV, 2023 WL 2576771, at *1 (Tex. App.—Austin Mar. 21, 2023, no pet.) (order lifting temporary stay of foreclosure sale).

**Cottonwood's appeal**

On appeal, Cottonwood presents six issues seeking reversal of the district court's rulings in favor of Preston Hollow and Winstead, recovery of the judgment it paid, and remand for determination of its attorney's fees. Cottonwood's first and primary issue asserts the applicability of res judicata as a bar to all Preston Hollow's claims. Cottonwood's second through fifth issues allege the invalidity of the loan transaction due to TOMA violations, contract zoning, improper delegation of the City's authority to a former City Manager, failure to seek and obtain the Texas Attorney General's review of the loan transaction, and Preston Hollow's prior material breach of the Loan Agreement. Lastly, Cottonwood's sixth issue alleges that Winstead was not entitled to summary judgment on its affirmative defense of attorney immunity.

## DISCUSSION

**Standard of review**

"We review summary judgments de novo, viewing the evidence in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022).[12] A party moving for traditional summary judgment has the burden of showing that "there is no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Tex. R. Civ. P. 166a(c). By contrast, a party may obtain a no-

---

[12] We review the ruling on Cottonwood's combined "plea in bar" under the same standard because it was brought through the summary-judgment process. *See Texas Highway Dep't v. Jarrell*, 418 S.W.2d 486, 488 (Tex. 1967) (noting that res judicata is "a plea in bar" that if sustained would require take-nothing judgment against claimant); *Kelley v. Bluff Creek Oil Co.*, 309 S.W.2d 208, 214 (Tex. 1958) (noting that final judgment may be obtained on pleas in bar without formal trial on merits if parties agree or "if recourse is had to the process of summary judgment where contested fact issues are not present").

evidence summary judgment when "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Id.* R. 166a(i). A no-evidence motion "shifts the burden to the nonmovant to present evidence raising a genuine issue of material fact supporting each element contested in the motion." *JLB Builders, L.L.C. v. Hernandez*, 622 S.W.3d 860, 864 (Tex. 2021).

A genuine issue of material fact exists if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017) (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). Evidence does not create an issue of material fact if it is "so weak as to do no more than create a mere surmise or suspicion" that the fact exists. *Id.* (citing *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014)).

Cottonwood's issues include questions of contract construction. Contract construction also presents a question of law. *Sundown Energy LP v. HJSA No. 3, Ltd. P'ship*, 622 S.W.3d 884, 888 (Tex. 2021). "When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent." *Id.* We "presume parties intend what the words of their contract say," *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 888 (Tex. 2019), and we interpret "contract language according to its 'plain, ordinary, and generally accepted meaning' unless the instrument directs otherwise," *URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 764 (Tex. 2018) (quoting *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). We do not consider words and phrases in isolation but "consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." *Pathfinder Oil & Gas*, 574 S.W.3d at 889.

"If a written contract is so worded that it can be given a definite or certain legal meaning when so considered and as applied to the matter in dispute, then it is not ambiguous." *URI*, 543 S.W.3d at 765. The question of "whether a contract is ambiguous is a question of law for the court." *North Shore Energy, L.L.C. v. Harkins*, 501 S.W.3d 598, 602 (Tex. 2016) (per curiam). Courts construe unambiguous contracts as a matter of law. *Perthuis v. Baylor Miraca Genetics Labs., LLC*, 645 S.W.3d 228, 235 (Tex. 2022). On the other hand, "if the contract is subject to two or more reasonable interpretations after applying the pertinent construction principles, the contract is ambiguous, creating a fact issue regarding the parties' intent." *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015). Summary judgment "is not the proper vehicle for resolving disputes about an ambiguous contract." *Id*.

### 1. Res judicata does not bar Preston Hollow's claims against Cottonwood

Cottonwood filed a combined plea in bar and summary-judgment motion and later, a separate summary-judgment motion, contending that it conclusively established the applicability of res judicata. Cottonwood likewise filed responses to Preston Hollow's motion and amended motion for summary judgment, and a motion to reconsider the grant of summary judgment to Preston Hollow, contending that it raised a fact issue as to the applicability of res judicata. Res judicata is an affirmative defense that may be raised in a summary-judgment motion. *See* Tex. R. Civ. P. 94; *Villarreal v. Ramirez*, 685 S.W.3d 868, 884 (Tex. App.—San Antonio 2024, no pet.). Cottonwood's motions argued that res judicata applied to this case and barred Preston Hollow from relitigating in state court all claims arising from the Loan Agreement that could have been brought in the federal-court case.

20

In Texas, the preclusive effect of a federal judgment is determined by federal law. *John G. & Marie Stella Kenedy Mem'l Found. v. Dewhurst*, 90 S.W.3d 268, 287 & n.60 (Tex. 2002) ("federal law controls the determination of whether res judicata will bar a later state court proceeding" (citing *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 718 (Tex. 1990))). Under federal law, the doctrine of res judicata bars claims if: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions. *Lewis-Watson v. Wormuth*, No. 23-50538, 2024 WL 277725, at *2 (5th Cir. 2024); *Wetherbe v. Texas Tech Univ. Sys.*, 699 F. App'x 297, 302 (5th Cir. 2017); *Eagle Props.*, 807 S.W.2d at 718. The first element, as to the identity of the parties, is not disputed. Cottonwood's argument focuses on the third and fourth elements, requiring judgment "on the merits" and the "same claim" in both actions. Preston Hollow argues the second element, requiring judgment by a "court of competent jurisdiction" that would have had jurisdiction over its state-court claims, is determinative. We agree with Preston Hollow.

Relying on Federal Rule of Civil Procedure 41(b), Cottonwood contends that the federal court's dismissal of Preston Hollow's takings claim was an adjudication "on the merits" that barred further litigation in state court. Rule 41(b) provides: "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." Additionally, Cottonwood contends that Preston Hollow's subsequent state-district-court suit involved the "same claims" as the federal-court suit because of the transactional approach taken toward res judicata. Under the transactional approach, "a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected

21

transactions, out of which the action arose." *Barr v. Resolution Tr. Corp.*, 837 S.W.2d 627, 631 (Tex. 1992) (citing Restatement (Second) of Judgments § 24(1)). Cottonwood's position is based on the general rule that "when a cause of action is brought in federal court and there is no jurisdictional obstacle to advancing claims arising from both federal and state law, but only federal claims are asserted, the state claims cannot be brought in a subsequent cause of action in state court." *Eagle Props.*, 807 S.W.2d at 718.

However, as Preston Hollow points out, there are two exceptions to that general rule. The exceptions concern the "court of competent jurisdiction" element and are derived from the Restatement (Second) of Judgments § 25, comment e, which provides that a "subsequent action based on the state claims will not be precluded" if (1) the federal court did not possess jurisdiction over the omitted state claims or (2) "having jurisdiction, [it] would clearly have declined to exercise that jurisdiction as a matter of discretion." *Id*. (citing *Jeanes v. Henderson*, 688 S.W.2d 100, 104 (Tex. 1985); Restatement (Second) of Judgments § 25 cmt. e); *accord Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, 83 F. Supp. 2d 781, 792 (E.D. Tex. 2000) (noting that Restatement (Second) of Judgments § 25 applies to claim-preclusion analysis regardless of whether first judgment is rendered by federal court or state court).[13] The latter exception

---

[13] The Restatement (Second) of Judgments § 25, comment e, states:

A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

recognizes that federal courts have discretion to decline the exercise of their "pendent" jurisdiction over state-law claims when an action presents some claims within the federal court's jurisdiction and some state-law claims without an independent basis for federal jurisdiction. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Res judicata does not preclude presentation of state-law claims that the federal court either expressly declined or would clearly decline to address through the exercise of its discretionary "pendent" or "supplemental" jurisdiction. *See* 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4436 (3d ed. 2024) (explaining that federal court's "[d]iscretionary refusal to exercise supplemental jurisdiction [ ] does not preclude subsequent action on state-law claims in a state court or in a federal court that has an independent basis of subject-matter jurisdiction"); *El Paso Nat. Gas Co. v. American Petrofina Co*., 733 S.W.2d 541, 552 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.) (rejecting res judicata plea and concluding that prior federal-court judgment did not preclude presentation of state-court claims because federal court "may have been authorized to accept pendent jurisdiction if it chose, but it specifically declined to do so"). One reason a federal district court may decline to exercise supplemental jurisdiction in a civil action is if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Routinely, federal courts decline to exercise jurisdiction over pendent state-law claims when the federal claims in the suit are dismissed pretrial.[14]

---

[14] *See, e.g*., *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351 (1988) (noting that when single federal-law claim is eliminated early in litigation, "the District Court ha[s] a powerful reason to choose not to continue to exercise jurisdiction"); *Lopez v. Lone Star Beef Processors LP*, 145 Fed. Appx. 473, 475 & n.18 (5th Cir. 2005) ("Ordinarily, when the federal claims are dismissed before trial, the pendent state claims should be dismissed as well." (quoting *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989))); *Parker & Parsley Petroleum Co. v. Dresser Indus*.,

To show that a federal court "would clearly have declined" to exercise its discretionary pendent jurisdiction, a party may identify cases indicating the federal court's practice of dismissing pendent state-law claims after all federal claims have been dismissed, especially when the federal-law claims were dismissed at an early stage. *See Motient Corp. v. Dondero*, 269 S.W.3d 78, 88-90 (Tex. App.—Dallas 2008, no pet.). In *Motient*, the Dallas Court of Appeals concluded that Motient met its burden of showing that the federal court "clearly would have refused to exercise its discretionary supplemental jurisdiction" over state-law claims. *Id.* at 90. Motient referenced eight cases in which the same federal-court judge who had dismissed Motient's federal suit with prejudice had previously "declined to exercise supplemental or pendent jurisdiction upon the dismissal of federal claims." *Id.* Moreover, because Motient made this showing, the Dallas Court ruled that Dondero "did not establish the 'court of competent jurisdiction' element of its res judicata affirmative defense as a matter of law" and reversed the summary judgment erroneously granted in favor of Dondero. *Id.*

Preston Hollow followed a procedure like the one in *Motient*. In its opposition to Cottonwood's motion to reconsider the summary judgment granted to Preston Hollow and in its opposition to Cottonwood's motion for summary judgment, Preston Hollow showed that (1) federal district court judge Lee Yeakel expressly declined to exercise supplemental jurisdiction when dismissing Preston Hollow's takings claim, and (2) in nine other cases, after dismissing

---

972 F.2d 580, 585 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."); *Preston Hollow Cap.*, 2021 WL 812114, at *6 (noting that "the Fifth Circuit generally favors dismissal when all federal claims have been dismissed and only pendant state law claims remain"); *Reece v. Murillo*, No. 1:21-CV-1146-LY, 2022 WL 1436244, at *5 (W.D. Tex. Apr. 12, 2022) (recommending dismissal of plaintiff's state-law claims and noting that "when all federal claims are dismissed prior to trial, the general rule in this circuit is to decline exercising jurisdiction over the remaining state law claims"), *appeal dismissed*, No. 22-50342, 2022 WL 16630284, at *1 (5th Cir. July 12, 2022).

federal-law claims, Judge Yeakel also declined to exercise pendent jurisdiction over potential or pleaded state-law claims.[15]  *See id*.  Additionally, the Fifth Circuit refused to issue any ruling addressing the impact of the dismissal of the takings claim on any other potential claims: "We do not address what effect, if any, this dismissal might have on potential claims that are not before us."  *Preston Hollow Cap., LLC v. Cottonwood Dev. Corp*., 23 F.4th 550, 554 n.1 (5th Cir. 2022).

---

[15] *See, e.g.*, *C.O-M ex rel. Mendoza v. Round Rock Indep. Sch. Dist*., No. A-19-CV-00860-LY, 2020 WL 10574223, at *2 (W.D. Tex. Sept. 30, 2020) (noting that there were no federal claims remaining against RRISD and stating that trial court "decline[d] to exercise supplemental jurisdiction over the Plaintiffs' pendant Texas state-law claims," which were dismissed without prejudice); *HCB Fin. Corp. v. McPherson*, No. A:18-CV-01120-LY, 2020 WL 5176173, at *5 (W.D. Tex. July 30, 2020) (dismissing plaintiff's federal RICO claims with prejudice and "as no other federal claims remain," declining to exercise supplemental jurisdiction over plaintiff's state-law claims); *Rudkin v. Roger Beasley Imports, Inc*., No. 1:17-CV-849-LY, 2019 WL 12536913, at *2 (W.D. Tex. Jan. 4, 2019) (dismissing with prejudice plaintiff's Title VII claim and declining to exercise supplemental jurisdiction over remaining state-law claims); *Razien v. Micro Focus (US), Inc*., No. A-16-CV-1209-LY, 2017 WL 5644381, at *2 (W.D. Tex. July 25, 2017) (dismissing plaintiff's federal claims against defendant and declining to exercise supplemental jurisdiction over remaining state-law claims); *Push Up Founds., Inc. v. Austin Hous. Fin. Corp*., No. A-16-CV-1163-LY, 2017 WL 11221431, at *1-2 (W.D. Tex. Feb. 21, 2017) (dismissing plaintiff's federal claim with prejudice for failure to state claim and "declin[ing] to exercise supplemental jurisdiction over any potential state-law claims" in complaint); *Lloyd v. Whitlock*, No. A-15-CV-551-LY, 2015 WL 13049217, at *1 (W.D. Tex. Aug. 31, 2015) (dismissing with prejudice plaintiff's federal claims for failure to state claim, "declin[ing] to exercise supplemental jurisdiction over any potential state-law claims asserted in Plaintiff's complaint, and noting that his "allegations at best would only amount to a potential breach of contract, breach of warranty or Deceptive Trade Practices claim under Texas state law," but such state-law claims must be filed in state court); *Ross v. Abbott*, No. CV 1:12-CA-0540-LY, 2013 WL 12393981, at *1 (W.D. Tex. Sept. 3, 2013) ("As all claims are dismissed except the Texas state-law claims alleged by [plaintiff] against Defendants, the court declines to exercise supplemental jurisdiction over these claims and dismisses them without prejudice."); *Save Our Springs All. v. Salazar*, No. A-10-CA-561-LY, 2010 WL 11569778, at *4 (W.D. Tex. Dec. 17, 2010) (dismissing with prejudice all plaintiff's federal claims, declining to exercise supplemental jurisdiction, and dismissing without prejudice all plaintiff's state-law claims); *Accutel of Tex., L.P. v. AT&T Corp*., No. A-05-CA-353-LY, 2008 WL 11400738, at *3 (W.D. Tex. Mar. 11, 2008) ("When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.  Because the Court finds that summary judgment should be granted against Plaintiffs on their interstate-access-charge claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims and dismisses those claims without prejudice.").

Based on Judge Yeakel's practice of dismissing pendent state-law claims after all federal claims have been dismissed—consistent with the Fifth Circuit's general preference for dismissal in such circumstances—Preston Hollow showed that Judge Yeakel would clearly have declined to exercise discretionary pendent jurisdiction over any of Preston Hollow's potential state-law claims after dismissal of the takings claim. *See Motient*, 269 S.W.3d at 88-89. Thus, Cottonwood failed to establish the "court of competent jurisdiction" element of its res judicata affirmative defense.

In its reply brief on appeal, Cottonwood argues that Preston Hollow presented its evidence of Judge Yeakel's practices for the first time in opposition to Cottonwood's motion to reconsider, and that the district court did not consider such evidence in denying that motion.[16] Cottonwood notes that when a motion to reconsider is filed after rendition of summary judgment, a trial court has discretion to consider the grounds raised in the motion and supporting proof and reaffirm its summary judgment based on the entire record, or to deny the motion without considering its substance. *See PNP Petroleum I, LP v. Taylor*, 438 S.W.3d 723, 729 (Tex. App.—San Antonio 2014, pet. denied). If there is no indication that a trial court considered evidence submitted in response to a motion to reconsider, an appellate court should not assume that the trial court considered it. *See id.* at 730-31 (noting trial court's order stated that evidence was

---

[16] Until its reply brief, Cottonwood made no argument responsive to Preston Hollow's contention that the federal district court clearly would have declined to exercise its discretionary pendent or supplemental jurisdiction over any potential state-law claims. "Ordinarily, an argument asserted for the first time in a reply brief is waived and need not be considered by an appellate court." *McFadden v. Olesky*, 517 S.W.3d 287, 293 n.3 (Tex. App.—Austin 2017, pet. denied) (internal citations omitted). But the parties joined issue when Preston Hollow fully argued this supplemental-jurisdiction element of res judicata in its appellee's brief and Cottonwood replied, so this argument is properly before us. *See id.*; *Hutchison v. Pharris*, 158 S.W.3d 554, 563 (Tex. App.—Fort Worth 2005, no pet.) (concluding that issue appellant raised for first time in reply brief was properly before court because parties joined issue when appellee fully argued issue and appellant replied).

struck and not considered); *McMahan v. Greenwood*, 108 S.W.3d 467, 500 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (noting defendants argued to trial court that it could not consider evidence).

Here, the record indicates that the district court considered the evidence Preston Hollow presented about Judge Yeakel's practices. This consisted of nine case-law citations with summaries of each and copies of those nine cases. The district court expressly stated that it reviewed "all the *case law* and briefing" when it notified the parties about the denial of Cottonwood's motion to reconsider and sent a copy of the court's signed order.[17] Thus, Cottonwood's argument that the district court did not consider the cases that Preston Hollow provided is incorrect and belied by the record.

Next, Cottonwood states that res judicata applies to Preston Hollow's state-court claims because Preston Hollow "judicially admitted the voidness of the underlying contracts" in the federal litigation.[18] However, "judicial admissions are not conclusive and binding *in a separate case from the one in which the admissions were made*." *Blankenship v. Buenger*, 653 Fed. Appx. 330, 335 (5th Cir. 2016). "A judicial admission 'has the effect of withdrawing a *fact* from contention.'" *Id.* A question of law for the court is not a "fact" that can be admitted. *Id*. (rejecting

---

[17] Cottonwood states that Judge Yeakel's Westlaw Profile Summary shows he presided over 2,075 cases, and that Preston Hollow's reference to 9 cases is insufficient to show what he would or would not do. Because Cottonwood does not state what portion of those 2,075 cases involved dismissals, Cottonwood's calculation of a percentage using that number is uninformative.

[18] In fact, the record reflects that in federal court, Preston Hollow stated that it "had not challenged or disputed *in this lawsuit* [Cottonwood and the City's] claim that all agreements between them are 'void.'" Preston Hollow notes that it asserted its takings claim in federal court not to the exclusion of pursuing state-law claims, but in the context of Cottonwood's assertions that their agreements were void. By contrast in state court, Preston Hollow was affirmatively asserting the validity and enforceability of the Loan Agreement and loan documents and challenging Cottonwood's assertions to the contrary.

plaintiff's contention that defendants' state-court pleading, invoking official immunity afforded to public officials, constituted judicial admission precluding defendants from taking contrary position in federal court). "The issue of res judicata is a question of law." *Kinney v. BCG Att'y Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *9 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.). Making the same error described in *Blankenship*, Cottonwood points to Preston Hollow's alleged "admissions" from another case, about a question of law, i.e., the voidness of the underlying contracts in this case. The complained-of statements from Preston Hollow in federal court are not judicial admissions, and they do not support Cottonwood's res judicata arguments.

On this record, we conclude that Preston Hollow met its burden of showing that after dismissal of the takings claim, the federal-district court would clearly have declined to exercise its discretionary jurisdiction over any state-law claims that might have been raised, based on the federal court's practice in other cases. Cottonwood's plea in bar and summary-judgment motions did not conclusively establish the applicability of res judicata, and Cottonwood's responses to Preston Hollow's summary-judgment motions and motion to reconsider did not raise a genuine issue of material fact as to the applicability of res judicata. Thus, we overrule the portions of Cottonwood's first through fifth issues asserting that res judicata barred all Preston Hollow's claims.

## 2. Cottonwood did not show that TOMA allows governmental body to sue itself

Cottonwood, a local-government corporation created by the City, contends that it was entitled to summary judgment on its claim that "[t]he acts taken by the City and [Cottonwood] were in violation of TOMA." As a corollary to this contention, Cottonwood asserts that it

has standing to bring an action for its own, and the City's, alleged TOMA violations, which purportedly voided the loan documents.

Under the Texas Open Meetings Act § 551.142(a), an interested person may bring an action by mandamus or injunction to stop, prevent, or reverse a violation or threatened violation of TOMA by members of a governmental body. Tex. Gov't Code § 551.142(a). Cottonwood says that it qualifies as an "interested person" under this statute because the Code Construction Act defines "person" to include a "government or governmental subdivision or agency." *See id.* § 311.005(2).

However, the TOMA statute distinguishes between the "interested person" who may bring an action and the "members of a governmental body" who are the subjects of that action. *See id*. § 551.142(a). The court in *County of Ward v. King*, presented with an analogous issue under a prior version of TOMA, concluded that the open-meeting statute authorizing an "interested person" to sue for violations conferred no authority on the county attorney to act for the county by suing the county judge and county commissioners who failed to give notice about the subject matter of a commissioners' court meeting. *See* 454 S.W.2d 239, 241 (Tex. App.—El Paso 1970, writ dism'd w.o.j.). Cottonwood cites no authority, and we have found none, holding that TOMA allows a governmental body to sue itself, or more precisely, that a local-government corporation may sue the governmental entity that created it for alleged TOMA violations. Without first showing its right to bring the TOMA action, Cottonwood cannot show its entitlement to judgment as a matter of law on a claim asserting that Cottonwood's and the City's alleged failures to comply with TOMA invalidated the loan documents. We overrule the portion of Cottonwood's second through fifth appellate issues contending that it raised a fact issue regarding TOMA violations in

29

response to Preston Hollow's motion for summary judgment, and that it conclusively established TOMA violations in support of its summary-judgment motions.

### 3. Challenges to validity of loan documents

Cottonwood contends that the Term Sheet is void because of "contract zoning," and that the loan documents were void ab initio because of the City's improper delegation of governmental power to a former City Manager, Odis Jones. On these bases, Cottonwood asserts that the district court's final judgment, the order granting Preston Hollow's summary judgment, and the order denying Cottonwood's summary judgment should be reversed.

### a. "Contract zoning" not pleaded

Cottonwood's summary-judgment motion and its response to Preston Hollow's summary-judgment motion included an argument that the Term Sheet was void ab initio because it included a sentence stating that "[t]he City of Hutto agrees to (i) the terms of Section D.6 hereof and (ii) to take the zoning and land entitlement actions set out herein." Cottonwood contends that this constituted "illegal contract zoning." *See City of White Settlement v. Super Wash, Inc.*, 198 S.W.3d 770, 772 n.2 (Tex. 2006) (explaining that "'[c]ontract zoning' occurs when a governmental entity, such as a city, enters into a binding contract in which it promises to zone land in a certain way in exchange for a landowner's promise to use the land in a particular manner" and that "contract zoning is invalid because, by entering into such agreements, the city impermissibly abdicates its authority to determine proper land use, effectively bypassing the entire legislative process."). However, Cottonwood's third-party petition failed to plead any claim against Preston Hollow alleging invalidity of the Term Sheet because it required "contract zoning." When Cottonwood first raised this argument in its summary-judgment motion, Preston Hollow pointed

out the lack of supportive pleading and objected: "Preston Hollow objects to this argument because it exceeds the scope of the allegations pleaded in CDC's [Cottonwood's] Third-Party Petition." In its brief, Preston Hollow again raised the lack of any contract-zoning claim in Cottonwood's petition. Cottonwood does not address this pleading deficiency.

It is fundamental that a motion for summary judgment must be supported by the pleadings on file, and the final judgment of the court must conform to those pleadings. *Hernandez v. Hernandez*, 632 S.W.3d 92, 97 (Tex. App.—El Paso 2020, no pet.) (citing *Houle v. Casillas*, 594 S.W.3d 524, 541 (Tex. App.—El Paso 2019, no pet.)); *Elite Towing v. LSI Fin. Grp.*, 985 S.W.2d 635, 641 (Tex. App.—Austin 1999, no pet.). Without a supportive pleading, Cottonwood's contract-zoning argument is unreviewable by this Court. *See Hernandez*, 632 S.W.3d at 97-98 (concluding that plaintiff who raised argument in response to defendant's summary-judgment motion but never raised it as claim in his petition presented nothing for appellate review). Accordingly, we overrule the portions of Cottonwood's first, fourth, and fifth issues alleging that it "conclusively established and raised a fact issue" as to the validity of the Term Sheet because of contract zoning.

### b. "Illegal delegation" to former City Manager Odis Jones

Cottonwood also moved for summary judgment contending that it conclusively established that the Term Sheet, Loan Agreement, and Omnibus Agreement—executed by Mayor/Cottonwood Chair Gaul and Assistant City Manager/Cottonwood Board Member Frankland after former City Manager Odis Jones had separated from the City—were void ab initio because of illegal delegations of authority to Jones. For this complaint, Cottonwood references the April 18, 2019 and July 3, 2019 minutes of City meetings during which Jones was authorized

31

to negotiate and execute all necessary agreements related to Project Expansion. Cottonwood's summary-judgment motion states broadly that illegal delegations to Jones cannot be ratified; acknowledges his separation from the City before execution of the Term Sheet, Loan Agreement, and Omnibus Agreement but asserts "that does not save them"; and says "Preston Hollow's reliance on the earlier grants of unfettered authority to the ex-city manager" is misplaced.

Jones separated from the City in December 2019, before preparation of the Term Sheet, Loan Agreement, and other loan documents. Those instruments were separately approved and executed by Gaul and Frankland for Cottonwood as the contracting party. *See, e.g.*, *Southern Cas. Co. v. Morgan*, 299 S.W. 476, 477 (Tex. App.—Fort Worth 1927), *aff'd*, 12 S.W.2d 200 (Tex. Comm'n App. 1929) ("An agreement will be enforced, even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration."); *see also B. F. Goodrich Rubber Co. v. Town of Collinsville*, 101 S.W.2d 583, 584 (Tex. App.—Dallas 1937, no writ) (noting that municipal contracts which are not void, but defectively executed by some officer, body, or board that lacked authority to act because such authority had not been expressly conferred upon that officer or body by ordinance, may be ratified by acts and conduct of municipality's governing body). Cottonwood does not explain how any alleged improper delegation of authority to Jones for property purchases in April and July 2019—before any involvement by Preston Hollow—invalidates Cottonwood's subsequent loan transaction with Preston Hollow. Cottonwood has the burden to brief issues it wants reviewed on appeal. *See* Tex. R. App. P. 38.1(i) (requiring clear and concise argument for contentions made); *Flores v. Zimprich*, 559 S.W.3d 223, 229 (Tex. App.—El Paso 2018, no pet.). It is a "well-established principle that an appellate court is not permitted to make a party's argument for him." *Id*. Accordingly, we overrule the portions of Cottonwood's first and fifth issues alleging it "conclusively established"

that the Term Sheet, Loan Agreement, and Omnibus Agreement were void ab initio due to illegal delegations of authority to the former City Manager.

### 4. Loan documents are not void due to lack of Texas Attorney General's approval

Cottonwood contends that the Loan Agreement and all related agreements and documents are void ab initio because Preston Hollow failed to secure the Texas Attorney General's approval of the note, violating Texas Transportation Code § 431.071(a), which states that "[a] corporation shall submit a bond or note authorized under Section 431.070 and a contract supporting its issuance to the attorney general for examination." However, we have previously determined that "Section 431.071 [of the Transportation Code] provides no consequence for failure to submit a bond or note to the AG for examination, much less for failure thereafter to obtain AG approval, and it does not condition the validity or enforceability of the subject instruments on AG approval." *River Creek Dev. Corp. v. Preston Hollow Cap., LLC*, No. 03-23-00037-CV, 2024 WL 3892448, at *6 (Tex. App.—Austin Aug. 22, 2024, no pet. h.) (mem. op.) (distinguishing express requirement that corporation merely "submit" subject instrument "for examination" from nonexistent requirement to "obtain AG approval").

We noted that if such approval is obtained, a statutory defense is available: "After approval by the attorney general, a bond, note, or contract may not be contested for any reason." *Id.* (citing Tex. Transp. Code § 431.071(b), (c)). Thus, the potential benefit of a statutory defense may be lost if the Texas Attorney General's approval is not sought and obtained, "but loss of that defense does not—absent express statutory language to the contrary—convert the instrument into an illegal or void bond, note, or supporting contract." *Id.* We overrule this portion of Cottonwood's second through fifth appellate issues.

**5. Cottonwood did not raise a fact issue as to Preston Hollow's prior material breach**

Cottonwood alternatively argues that even if the "relevant contracts are not void," the final judgment and Preston Hollow's summary judgment should be reversed because Cottonwood raised a fact issue regarding Preston Hollow's prior material breach. We disagree.

In response to Preston Hollow's summary-judgment motion, Cottonwood argued that the Loan Documents[19] obligated Preston Hollow to fund an initial advance of no less than $15,000,000 at the closing held on February 14, 2020; that Preston Hollow breached the Loan Agreement by failing to release the remaining approximately $2.5M owed; that Preston Hollow had no effective consent from Cottonwood to withhold such funds; and that Cottonwood was relieved of any duty to perform. *See Bartush- Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017) ("It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance.").

Contrary to Cottonwood's characterization, the summary-judgment evidence conclusively established that no breach occurred. Preston Hollow's evidence shows that it

---

[19] The Loan Documents are defined in the Loan Agreement as:

This Agreement, the Note, the Environmental Indemnity Agreement, the Security Documents, the Interlocal Agreement and any and all other agreements, documents and instruments now or hereafter executed by Borrower, or any other Person or party in connection with the Loan evidenced by the Note or in connection with the payment of the Indebtedness or the performance and discharge of the Obligations, including without limitation that certain Assignment and Subordination of the Development Agreement, together with any and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, extensions and supplements hereof and thereof.

disbursed the full $15 million into escrow for Cottonwood's benefit at closing, consistent with the Loan Agreement. This disbursement is reflected on Line 220 of the Closing Statement:

| 217. | |
|---|---|
| 218. | |
| 219. | |
| 220. Total Paid By/For Borrower | $15,000,000.00 |

Preston Hollow's evidence further showed that the City's and Cottonwood's authorized representatives, including director of economic development Bullock, and McGinnis Lochridge attorney Ernst, agreed that approximately $2.5 million of these funds could remain in escrow. As we have noted, on February 14, 2020, Ernst sent an email to Nydegger of Winstead—copied to Huckabay and Cottonwood Board Members Frankland and Sorrell—confirming that "the Borrower [Cottonwood] is also agreeable to holding the amount [$2,554,961.76] show[n] on Line 303 of the Closing Statement in Escrow with the Title Company [Longhorn Title] pending further joint release instructions further instructions [sic] from the Borrower and Lender [Preston Hollow]." This escrow agreement was reiterated soon afterward in an email sent the same day from Bullock to Huckabay, McGinnis Lochridge counsel, Winstead counsel, and Preston Hollow staff stating, "Borrower agrees funds shown in 3.03 [sic] of closing statement will be held in escrow until post closing[,] pending post closing instructions from the borrower and lender."[20] That agreement was not a breach; rather, Preston Hollow sent the money where it was told. Cottonwood did not present contrary evidence to create a fact issue. Thus, we overrule the portion of Cottonwood's fourth and fifth appellate issues contending that it raised a fact issue as to its affirmative defense of an alleged prior material breach.

---

[20] During a subsequent deposition, Cottonwood's corporate representative and chair Tanner Rose testified that assistant city manager Byron Frankland had agreed to the withholding of $2.5 million of the original $15 million advance under the loan.

**6. Winstead conclusively established its attorney-immunity defense**

Cottonwood contends that the district court erred by granting Winstead's summary-judgment motion, which raised the affirmative defense of attorney immunity and asserted that Cottonwood's claims were based entirely on Winstead's conduct during its representation of Preston Hollow. As the summary-judgment movant on an affirmative defense, Winstead has the burden of conclusively establishing that attorney immunity bars Cottonwood's recovery on its claims. *See Taylor v. Tolbert*, 644 S.W.3d 637, 645 (Tex. 2022).

In its third-party claim, Cottonwood alleged that Winstead attorney Thurman, as counsel for lender Preston Hollow, instructed Longhorn Title to pay $60,000 of attorney's fees to Winstead at closing out of loan proceeds that Preston Hollow funded; the $60,000 was properly distributable to Cottonwood; Cottonwood's Board of Directors did not approve or authorize making the $60,000 payment at closing; and making the $60,000 payment at closing was contrary to the Loan Agreement's provision that Cottonwood "will reimburse" Preston Hollow for its attorneys' fees: "Borrower [Cottonwood] will promptly reimburse Lender [Preston Hollow] for all expenses of Lender, including . . . reasonable attorneys' fees incurred[.]" Based on these allegations, Cottonwood pleaded causes of action for conversion and civil conspiracy against Winstead and requested declarations that Winstead's conduct was unlawful and illegal:

- **Conversion**

  Cottonwood claimed that Winstead "illegally converted $60,000 by directing distribution to itself of Winstead['s] attorney's fees";

- **Civil Conspiracy**

  Cottonwood claimed that Winstead conspired with Longhorn by "acting in concert with Longhorn and having a meeting of the minds with Longhorn to further the tort of conversion through unlawfully depriving Cottonwood of $60,000 in proceeds from a Loan Agreement"; and

36

- **Declaratory Judgment**

    Cottonwood requested UDJA declarations that (1) "Winstead wrongfully and illegally converted $60,000 of loan funds that belonged to Cottonwood," (2) "Winstead is in wrongful and illegal possession of $60,000 in loan funds that should be repatriated and transferred to Cottonwood by Winstead," and (3) "Winstead engaged in and committed civil conspiracy against Cottonwood, acting in concert with Longhorn."

It is undisputed that Cottonwood was not Winstead's client. McGinnis Lochridge, not Winstead, represented Cottonwood in the underlying loan transaction between Preston Hollow and Cottonwood. Cottonwood and Preston Hollow are unrelated and unaffiliated with each other, and the Loan Agreement specified that the "relationship between Borrower and Lender is solely that of debtor and creditor." The loan to Cottonwood from Preston Hollow was an arm's length transaction. *See Arm's-Length Transaction*, Black's Law Dictionary (12th ed. 2024) ("1. A transaction between two unrelated and unaffiliated parties. 2. A transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises.").

"A lawyer representing a client in an arm's-length business transaction does not owe a duty of care to opposing nonclients." *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 80 (Tex. 2021) (quoting Restatement (Third) of the Law Governing Lawyers § 51 cmt. c). Under Texas law, attorneys are generally immune from civil liability to nonclients for actions taken within the scope of legal representation if those actions involve the kind of conduct that attorneys engage in when discharging their professional duties to a client. *Taylor*, 644 S.W.3d at 642. The immunity inquiry focuses on the function and role the lawyer was performing, not the alleged wrongfulness, or even asserted criminality, of the lawyer's conduct. *Id.*

The attorney-immunity defense applies to claims based on conduct in non-litigation and litigation contexts. *Haynes & Boone*, 631 S.W.3d at 79. The only facts required to support the attorney-immunity defense are the type of conduct at issue and the existence of an attorney-client relationship at the time that the attorney engaged in the conduct. *Taylor*, 644 S.W.3d at 645. We must then decide "the legal question of whether said conduct was within the scope of representation." *Id.* Attorney immunity protects an attorney against a nonclient's claim when the claim is based on (1) conduct constituting the provision of legal services involving the unique office, professional skill, training, and authority of an attorney and (2) the attorney engages in such conduct to fulfill the attorney's duties in representing the client within an adversarial context in which the client and the nonclient do not share the same interests and therefore, the nonclient's reliance on the attorney's conduct is not justifiable. *Haynes & Boone*, 631 S.W.3d at 78.

Cottonwood asserts that Winstead "provided no evidence" showing that assurance of payment is "conduct in the scope of representation" and that Winstead "argues for the first time on appeal that assuring it was paid from the loan proceeds benefited its client 'by relieving PHC from the obligation of paying those fees itself.'" We disagree.

Winstead's summary-judgment evidence showed that Thurman drafted a letter with instructions for closing the loan transaction and sent it to Longhorn Title. Within the section of the Closing Statement listing the settlement costs to be "paid from Borrower's funds at settlement" was $60,000 in attorney's fees to Winstead. McGinnis Lochridge attorney Allen had previously reviewed the Closing Statement and confirmed to Longhorn Title that the fees would be taken out of the initial advance. Longhorn Title sent the signed Closing Instructions letter to counsel for both parties and three Preston Hollow employees: Dinan, Benitez, and Hill. Afterward, Winstead attorney Nydegger sent Winstead's attorney's fee invoice to Longhorn Title, the City's director of

economic development, and three attorneys at McGinnis Lochridge: Allen, Bingham, and Ernst. Board Member Frankland, Cottonwood's authorized representative, signed the Closing Statement for Cottonwood.

Winstead's summary-judgment evidence also included Thurman's declaration, averring that all her conduct and that of the other Winstead attorneys in connection with the loan, including preparation and approval of the Closing Instructions letter, delivery of closing-related materials to McGinnis Lochridge and Cottonwood (including Winstead's invoice), approval of the Closing Statement, and closing of the loan, constituted legal services involving the unique office, professional skill, training, and authority of the attorneys, and that all such conduct was undertaken solely on behalf of their client, Preston Hollow.

Further, Winstead contended that assuring the payment of those fees at closing benefited Preston Hollow by relieving it of the obligation to pay those fees itself. Winstead presented this exact argument to the district court below:

> [P]ayment of Winstead's attorney's fees at closing was of no special benefit to Winstead. PHC [Preston Hollow] was obligated to pay Winstead's attorneys' fees whether the loan closed or not. As in most large loan transactions, the borrower (Cottonwood) agreed in the loan documentation to pay the lender's (PHC's) attorneys' fees. Both Cottonwood and its counsel signed off on the closing statement providing that those fees would be paid at closing. The payment of those fees benefited PHC (Winstead's client) by relieving PHC from the obligation to pay those fees itself. Winstead was going to be paid either way. Thus, even if there were a "self-interest" exception to the attorney immunity doctrine, which there is not, the exception would not apply to this case. Everything Winstead did in connection with the loan—including any alleged conduct affecting payment of PHC's attorney fee obligation from closing proceeds—was done for PHC's benefit as part of Winstead's skilled representation.

Cottonwood acknowledges that the Loan Agreement required it to pay Preston Hollow's attorneys' fees. Cottonwood's complaint is about the way that Winstead assured payment

39

of those fees, which Cottonwood contends was contrary to the Loan Agreement. But "immunity focuses on the type of conduct, not on whether the conduct was meritorious in the context of the underlying suit." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 406 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). For instance, in *Cantey Hanger*, the Texas Supreme Court held that a complaint about a law firm's preparation of transactional, bill-of-sale documents ancillary to a divorce decree, which shifted tax liabilities, was protected by the attorney-immunity defense, even if those documents violated the divorce decree. *Id.* at 485; *see also Santiago v. Mackie Wolf Zientz & Mann, P.C.*, No. 05-16-00394-CV, 2017 WL 944027, at *3 (Tex. App.—Dallas Mar. 10, 2017, no pet.) (mem. op.) (concluding that attorney-immunity defense applied to borrowers' claim against lender's lawyer who sent acceleration and foreclosure notices to borrowers based on allegedly counterfeit note). And in *U.S. Bank National Association v. Sheena*, the Fourteenth Court of Appeals concluded that attorney immunity barred the lender's claims against the borrower's attorney, who knew of the lender's interest in certain insurance proceeds, but negotiated the proceeds through his trust account and disbursed a portion of the proceeds to himself as his attorney's fee. 479 S.W.3d 475 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

We conclude that the complained-of conduct, involving Winstead's instructions to Longhorn Title to pay $60,000 of attorney's fees to Winstead at closing out of loan proceeds that Preston Hollow funded, was within the scope of Winstead's representation. *See Taylor*, 644 S.W.3d at 645. The signed letter with Winstead's Closing Instructions was provided before closing to Winstead's client, Preston Hollow. The summary-judgment evidence supports that this conduct constituted "the provision of legal services involving the unique office, professional skill, training, and authority of an attorney," and that Winstead engaged in that conduct as part of its

representation of Preston Hollow "within an adversarial context in which the client and the non-client d[id] not share the same interests." *See Haynes & Boone*, 631 S.W.3d at 78. Cottonwood's arguments challenging the applicability of attorney immunity to its pleaded claims lack record support and are unpersuasive. Because Winstead conclusively established that attorney immunity bars Cottonwood's recovery, summary judgment was proper. We overrule Cottonwood's sixth and final issue.

## CONCLUSION

Having overruled all of Cottonwood's appellate issues, we affirm the district court's

(1) Order denying Cottonwood's Plea in Bar on Basis of Res Judicata and Motion for Summary Judgment;

(2) Order granting Preston Hollow Capital LLC's Amended Motion for Summary Judgment;

(3) Order denying Cottonwood Development Corporation's Motion to Reconsider Summary Judgment Order Granting Summary Judgment to Preston Hollow Capital on the Basis of Res Judicata;

(4) Order granting Preston Hollow Capital, LLC and PHCC LLC's Motion for Summary Judgment;

(5) Order granting Winstead PC's Motion for Summary Judgment;

(6) Final Judgment and Order of Foreclosure;

(7) Order denying Cottonwood Development Corporation's Motion for Temporary and Permanent Injunction Suspending the Judgment by Operation of Law and Preventing Issuance of Order of Sale by the District Clerk; and

(8) Order denying Cottonwood Development Corporation's Motion to Set Aside Deeds of Trust Validated Within the Court's Judgment to Permit the Sale of Property and to Place Net Proceeds in the Court's Registry in Sufficient Amounts to Satisfy Judgment in the Event of a Final Judgment in Favor of Preston Hollow.


_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Affirmed

Filed:   November 27, 2024